UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

HI-LEX CONTROLS INCORPORATED,
HI-LEX AMERICA, INCORPORATED
and HI-LEX CORPORATION HEALTH
AND WELFARE PLAN,

     Plaintiffs,

v.

BLUE CROSS AND BLUE SHIELD OF
MICHIGAN,

     Defendant.

CASE NO:

Hon.

**<u>JURY TRIAL DEMANDED</u>**

## <u>COMPLAINT</u>

Plaintiffs, Hi-Lex Controls Incorporated and Hi-Lex America, Incorporated (hereafter collectively referred to as "Hi-Lex"), and Hi-Lex Corporation Health and Welfare Plan ("Plan"), by and through their counsel, Varnum LLP, hereby state as their Complaint against Defendant, Blue Cross and Blue Shield of Michigan ("BCBSM") as follows:

## <u>NATURE OF ACTION</u>

1.     Hi-Lex entrusted BCBSM to administer its self-insured employee benefit Plan. Pursuant to their contract, Hi-Lex wired large sums of money to BCBSM, which BCBSM was supposed to use to pay employee health care claims. Hi-Lex recently learned that, contrary to their contract, BCBSM was also skimming an additional administrative fee from the money Hi-Lex provided to pay claims. BCBSM's misappropriation of Plan assets is a clear violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*, as well as Michigan statutes

and common law.  Plaintiffs bring this suit to recover the misappropriated funds, and all other relief to which they are entitled.

## PARTIES, JURISDICTION AND VENUE

2.      Hi-Lex Controls Incorporated and Hi-Lex America, Incorporated are a Michigan corporations, with their principal places of business in Litchfield, Michigan.

3.      Hi-Lex Corporation Health and Welfare Plan is Hi-Lex's ERISA-governed benefit plan.  Hi-Lex and the Plan are hereafter collectively referred to as "Hi-Lex".

4.      BCBSM is a Michigan non-profit health care corporation organized under the Nonprofit Health Care Corporation Reform Act, MCL 550.1101, *et seq* (the "Act")

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132 because Hi-Lex's claims arise under ERISA.  This Court also has supplemental jurisdiction over Hi-Lex's state law claims pursuant to 28 U.S.C. § 1367.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because BCBSM resides in the Eastern District of Michigan.  Venue is also proper pursuant to 29 U.S.C. § 1132(e)(2).

## GENERAL ALLEGATIONS

7.      Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs.

8.      Hi-Lex is a leading supplier of electromechanical devices and control cables for the automotive and recreational vehicle markets.  Hi-Lex operates three plants in the State of Michigan and employs over 800 employees.

9.      Hi-Lex offers many of its fulltime employees health care benefits through the Plan.  Rather than buy health insurance to cover employee health care claims under

the Plan, Hi-Lex has opted to self-insure.  As such, Hi-Lex pays the actual employee health care costs covered by the Plan, up to a large threshold.  Hi-Lex then buys stop loss insurance to cover catastrophic claims that exceed that threshold.

**A.**     **Hi-Lex Contracted with BCBSM to Administer Its Self-Insured Plan.**

10.     The framework for the relationship between Hi-Lex and BCBSM is contained in the Administrative Services Contract ("ASC").  The ASC is a boilerplate document drafted by BCBSM and sets forth the rights and responsibilities of each party with regard to BCBSM's administration of the Plan.

11.     The first ASC between Hi-Lex and BCBSM was executed by the parties effective May 1, 1991.  Hi-Lex does not have a copy of the 1991 ASC, but it is believed to be in the control of BCBSM.

12.     Pursuant to the 1991 ASC, BCBSM agreed to administer Hi-Lex's Plan by paying covered employee health care claims on behalf of Hi-Lex, using money provided to it by Hi-Lex.

13.     In exchange for its services, BCBSM was entitled to an administrative fee.

14.     The ASC does not contain any pricing terms.  Rather, the specific fees to be paid by Hi-Lex in exchange for the administrative services provided by BCBSM were enumerated in a "Schedule A," which was part of the 1991 ASC.  Together, the 1991 ASC and Schedule A formed the parties' contract.

15.     The 1991 ASC was renewed year after year by the parties through April 2002.  Hi-Lex does not have copies of the 1991 – 2001 Schedule A's, but they are believed to be in the possession of BCBSM.

16.     The parties signed a new ASC in 2002.  *See* **Exhibit 1**.  The obligations of the parties under the 2002 ASC remained largely the same:  "BCBSM will process and pay, and [Hi-Lex ] … will reimburse BCBSM for all Amounts Billed related to Enrollees' claims.…"  *Id*. at 3.

17.     "Amounts Billed" is defined in the ASC as "the amount [Hi-Lex ] … owes in accordance with BCBSM's standard operating procedures for payment of Enrollees' claims."  *Id*. at 1.

18.     "Enrollees" are defined in the ASC as "Employees and dependents of Employees who are eligible and enrolled for Coverage."  *Id*. at 2.

19.     The 2002 ASC also incorporated a Schedule A, which set forth the specific administrative fee to be paid to BCBSM.

20.     The 2002 ASC was renewed year after year by the parties through 2011. The Schedule A's for years 2004 –2011 are attached as **Exhibit 2**.  Hi-Lex does not have copies of the 2002 or the 2003 Schedule A's, but they are believed to be in the possession of BCBSM.

**B.     Hi-Lex Provided BCBSM With Plan Assets, Which Were Controlled by BCBSM and Supposed to be Used to Pay Covered Employee Claims.**

21.     Under the 1991 ASC, Hi-Lex was required to prepay the pro rata cost of Amounts Billed for that Quarter, the pro rata cost of the estimated administrative charge for that Contract Year and the amount BCBSM determined was necessary to maintain the prospective hospital reimbursement funding for that Contract Year.

22.     The specific prepay amounts to be paid by Hi-Lex were dictated by the Schedule A's.

23.     The 2002 ASC also required Hi-Lex to prepay the estimated employee claims and administrative fees.  *See* Exhibit 1 at 8.  The prepay amounts under the 2002 ASC were also set forth in the Schedule A's.

24.     Under the ASC's, BCBSM was required to provide Hi-Lex with "a detailed settlement showing Amounts Billed to and owed by [Hi-Lex ] . . . during the prior available Quarter including any surplus or deficit amounts."  *See* Exhibit 1 at 9.

25.     The quarterly settlements were used to adjust the future prepay amounts upward or downward depending on whether employee health care claims were higher or lower than what Hi-Lex had previously prepaid.

26.     Pursuant to the terms of the 1991 and 2002 ASC's, as renewed, Hi-Lex wired the required prepayments to a BCBSM-owned bank account, on a periodic basis from 1991 through present.

27.     The prepayments wired to BCBSM's bank account were "Plan Assets" as defined by ERISA.

28.     BCBSM had complete authority and control over the bank account and the Plan Assets wired to it by Hi-Lex .

29.     BCBSM (1) exercised discretionary authority and control with respect to management of the Plan; (2) exercised authority and control with respect to management and disposition of Plan Assets; and (3) had discretionary authority and responsibility in the administration of the Plan.

## C.     BCBSM Illegally Skimmed Additional Administrative Compensation From the Plan Assets Entrusted to It.

30.     Hi-Lex has recently learned that starting in 1994, BCBSM implemented a scheme to secretly obtain more administrative compensation than it was entitled to.

31.     The scheme is outlined in an internal BCBSM memo that Hi-Lex obtained from other litigation pending against BCBSM related to the illegal over charges.  *See* **Exhibit 3**.

32.     According to the memo, BCBSM's plan was to lower its disclosed administrative fee to give the illusion of lower cost, while at the same time artificially inflating the amounts it reported as hospital claims cost.   BCBSM then kept the difference between what it was actually paying hospitals for employee claims and what it reported it was paying for hospital claims.

33.     In practice, the scheme worked as follows:  If BCBSM was required to pay a hospital $6,000 for a covered employee claim, it would report a charge of $6,810 ($6,000 claim plus a 13.5% add on) instead of passing the actual $6,000 on to the customer (as required by the ASC and Schedule A's).  BCBSM would keep the additional $810 for itself as administrative compensation.

34.     Based on information provided by BCBSM, Hi-Lex believes BCBSM skimmed Plan Assets equal to 13.5% of all Peer 1-4 hospital charges incurred by Hi-Lex employees.   The actual amount, however, is unknown to Hi-Lex and that information is solely in the control of BCBSM.   This skimming is hereafter referred to as the "Hidden Fees."

35.     According to BCBSM's memo, the new "pricing methodology" was done because under its then-current practice, certain fees were reported as "an add-on to the bill, highlighted for all to see" and "many customers have complained and have threatened to leave" BCBSM as a result.  *See* Exhibit 3 at 1.

36.     As trumpeted by BCBSM, by hiding the additional administrative compensation in the claims cost it became "<u>no longer visible to the customer</u>." (Emphasis added).   This in turn, resulted in the disclosed "administrative costs charged to customers . . .  lin[ing] up better with competitor fees," thereby creating the illusion of a more competitive price.  *See* Exhibit 3 at 2.

37.     BCBSM charged Hi-Lex Hidden Fees from 1994 through the present.  In fact, Hi-Lex has obtained a letter recently written by BCBSM wherein BCBSM admitted that the Hidden Fees "have been in place for Local ASC groups since 1994."  *See* **Exhibit 4**.

## D.     <u>BCBSM Violated the ASC's and Schedule A's by Charging the Hidden Fees.</u>

38.     Hi-Lex never agreed to pay the Hidden Fees.

39.     In fact, Article III of the 2002 ASC is entitled "Financial Responsibilities" and outlines nine specific amounts that Hi-Lex agreed to pay BCBSM for administering the Plan, none of which included the Hidden Fees:

1.     Amounts Billed during the current Contract Year.

2.     The hospital prepayment reflecting the amount BCBSM determines is necessary for its funding of the prospective hospital reimbursement.

3.     The actual administrative charge.

4.     The group conversion fee.

5.     Any late payment charge.

6.     Any statutory and/or contractual interest.

7.     Stop Loss premiums, if applicable.

8.     Cost containment program fee, if applicable.

9.     Any other amounts which are the Group's responsibility pursuant to this Contract, including but not limited to risks, obligations or

liabilities, deficit amounts relating to previous agreements, and deficit amounts relating to settlements.

*See* Exhibit 1 at 7.

40.    Likewise, the Schedule A's do not identify the Hidden Fees.  Just the opposite, the Schedule A's have a specific line item entitled "Administrative Charge" and the specific dollar amount for that charge is identified and agreed to in the Schedule A's (and does not include Hidden Fees).  *See* Exhibit 2.

41.    For example, the 2004 Schedule A provides for an administrative charge of $35.28 per covered employee, per month.  No additional administrative charge is disclosed or agreed to.  *See* Exhibit 2.

42.    BCBSM now contends that it was allowed to assess the Hidden Fees because of an amorphous "disclosure" included in some Schedule A's.  For years 2004-2005, the so-called disclosure read:

> Your hospital claims cost reflects certain charges for provider network access, contingency, and other subsidies as appropriate.

*See* Exhibit 2.

The term "provider network access" was not defined in the 2002 ASC or the Schedule A's.

43.    In 2006, BCBSM slightly modified the claimed disclosure:

> A portion of your hospital savings has been retained by BCBSM to cover costs associated with the establishment, management and maintenance of BCBSM's participating hospital, physician and other health provider networks.  The ASC Access Fee also covers any subsidies, surcharges and contributions to reserves ordered by the State Insurance Commissioner as authorized pursuant to P.A. 350.  *See* Exhibit 2.

*Id.*  The term "ASC Access Fee" was not defined in the 2002 ASC or Schedule A's.

44.     The 2007 and 2008 Schedule A's contained yet another iteration of the claimed disclosure:

> A portion of your hospital savings has been retained by BCBSM to cover the ASC Access Fee.  The ASC Access Fee covers (a) costs associated with the establishment, management and maintenance of BCBSM's participating hospital, physician and other health provider networks, (b) charges to help maintain BCBSM's surplus at an appropriate level in compliance with regulatory and Blue Cross and Blue Shield Association standards, and (c) cost transfer subsidies or surcharges authorized pursuant to 1980 P.A. 350, such as the group conversion fee and the 'other than group' subsidy.  *See* Exhibit 2.

Again, the term "ASC Access Fee" was not defined in the 2002 ASC or the 2007 and 2008 Schedule A's.

45.     The so-called disclosures of the Hidden Fees were, at best, ambiguous and misleading.  Moreover, nothing in the alleged disclosures explained how much the fee would be or how it would be calculated.

46.     Further, nothing in the Schedule A's indicated that Hi-Lex agreed to pay the Hidden Fees.  In fact, BCBSM's charging of Hidden Fees was inconsistent with the ASC's, which specifically identified Hi-Lex's payment obligations, none of which included paying the Hidden Fees.

47.     According to some of the Schedule A's, the Hidden Fees were allegedly charged to cover "costs associated with the establishment, management and maintenance of BCBSM's participating hospital, physician and other health provider networks…."  Yet, the Hidden Fees actually charged by BCBSM were based on a flat percentage of Peer 1-4 hospital charges, without regard to the actual "costs" described by BCBSM.

48.     The Hidden Fees were also inconsistent with the annual renewal proposals made by BCBSM.  For example, the 2007 renewal provided by BCBSM to Hi-Lex

described the disclosed Administrative Fee as "all-inclusive."   By describing the administrative fee as "all-inclusive," BCBSM represented to Hi-Lex that all of BCBSM's services were provided in exchange for one fee.  *See* **Exhibit 5**.

49.    The 2007 renewal packet did not disclose, much less explain, that BCBSM would actually be inflating claims costs in order to obtain administrative compensation, in addition to the so-called "all-inclusive" fee.

**E.**   **BCBSM Produced False and Misleading Settlement Statements and Form 5500's.**

50.    The 1991 and 2002 ASC's required BCBSM to provide Hi-Lex with detailed settlement statements.  *See* Exhibit 1 at 9.

51.    BCBSM provided quarterly and annual settlements, neither of which properly reported the Hidden Fees.

52.    The format of the annual settlements varied slightly over the years, but in general they included reporting of "actual claims" paid by BCBSM and "administrative fees."  Copies of all of the annual settlements Hi-Lex has are attached as **Exhibit 6**.

53.    The annual settlements provided by BCBSM to Hi-Lex were false and misleading in at least two respects.

54.    First, some of the annual settlements purported to disclose "actual claims paid by BCBSM."  This portion of the annual settlement was false because BCBSM did not actually pay covered employee claims in that amount.  Rather, BCBSM paid claims in some amount less than that, and skimmed the difference between what it actually paid in claims and the amount disclosed on the annual settlement as additional administrative compensation (the Hidden Fees).

55.    Second, while the annual settlements purported to disclose the administrative fees paid by Hi-Lex, the only administrative fees reported were the administrative fees specifically disclosed in the Schedule A's.  The Hidden Fees were not disclosed.

56.    Much like the annual settlements, the quarterly settlements purported to report "Total Claims Expense" and "Total Administrative Fee Expense."  Copies of an exemplar quarterly settlement is attached as **Exhibit 7**.

57.    Like the annual settlements, the quarterly settlements were false because they overstated the actual claims and understated the administrative compensation received by BCBSM.

58.    In addition to the annual settlements, BCBSM provided Hi-Lex with completed "Form 5500's."  The Form 5500's that Hi-Lex has are attached as **Exhibit 8**.

59.    The Form 5500 is a form developed by the Department of Labor, Internal Revenue Service and Pension Benefit and Guaranty Corporation and is required to be filed by certain employers as part of their obligations under Title I and Title IV of ERISA, as well as under the Internal Revenue Code.

60.    The Form 5500 required disclosure of total "claims paid."  The amount reported as claims paid by BCBSM included both the actual claims paid to health care service providers and the Hidden Fees that BCBSM skimmed for itself as additional administrative compensation.

61.    Thus, the Form 5500's provided by BCBSM were false in that they overstated the actual amount of claims paid.

62.     The Form 5500's also required disclosure of all commissions, administration fees, and other compensation or retention received by BCBSM.

63.     Under the category "Administration," BCBSM only reported the disclosed administrative fees, not the Hidden Fees.

64.     Under the category "Total Retention," BCBSM was required to report the total monies it received for administering the Plan, but again only reported disclosed administrative fees, not the Hidden Fees that it also received.

65.     Thus, the Form 5500's as submitted by BCBSM were false because they understated the administrative compensation received by BCBSM.

66.     BCBSM's strategy of secrecy worked as planned and Hi-Lex was unaware until 2011 that it had been charged Hidden Fees since 1994.

**F.      BCBSM Fraudulently Concealed the Hidden Fees.**

67.     As established by BCBSM's own internal memo, BCBSM engaged in a course of conduct intentionally designed to conceal evidence of its wrongdoing.

68.     The Hidden Fees were not disclosed, much less agreed to, in the ACS's or Schedule A's.

69.     In addition, BCBSM repeatedly produced false settlement reports that (1) did not disclose the Hidden Fees at all and (2) understated the amount of administrative compensation it was receiving.

70.     In furtherance of its secret scheme, BCBSM also issued a detailed training manual for its sales representatives entitled "Talking Points, Conversations with Customers, ASC Access Fee" in 2006.  *See* **Exhibit 9**.

12

71.     The training manual, which stated at the bottom of each page that it was "for BCBSM sales representative use only," started with an explanation of what the Hidden Fees were and how they were calculated.  Apparently, the Hidden Fees were so secretive, not even BCBSM's own sales representatives knew anything about them.

72.     The thrust of the training manual was a section called "how to present the ASC access fee" which counseled BCBSM sales representatives to only discuss the fee as "part of the larger conversation you have with your customers" and that the "access fee should not be the focal point of your discussions."  *See* Exhibit 9 at 7.

73.     Indeed, rather than allowing the BCBSM sales representatives to simply disclose the access fees in a clear and unambiguous fashion, the training manual "strongly recommend[s] that you meet with your underwriters to develop an individual strategy for each of your groups."  *See* Exhibit 9 at 7.

74.     Thus, BCBSM's own training manual further shows its intentional concealment of the Hidden Fees.

75.     Hi-Lex was not on actual or constructive notice that BCBSM was charging the Hidden Fees, despite the exercise of reasonable diligence on its part.

## COUNT I
## BREACH OF FIDUCIARY DUTY – ERISA

76.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs.

77.     BCBSM was a fiduciary pursuant to 29 U.S.C. § 1002(21)(A) with respect to the Plan because (1) it exercised discretionary authority and control over management of the Plan; (2) it exercised authority and control over management and disposition of

Plan Assets; and (3) it had discretionary authority and responsibility in the administration of the Plan.

78.     Hi-Lex is a fiduciary because it exercises discretionary authority and control over management of the Plan.

79.     As a fiduciary, BCBSM was required to, among other things, discharge its duties solely in the interest of the participants and beneficiaries of the Plan, preserve Plan Assets, fully disclose its actions and any compensation it was taking for its services, avoid making false or misleading statements, and abide by any statutory obligations or restrictions imposed on it.

80.     BCBSM breached its fiduciary duties by, among other things:

(a)     Charging the Hidden Fees;

(b)     Failing to disclose the Hidden Fees;

(c)     Submitting false and misleading quarterly and annual settlement statements;

(d)     Submitting false and misleading Form 5500's;

(e)     Violating the Act, as explained *infra*;

(f)     Violating the Health Care False Claims Act, as explained *infra*; and

(g)     Otherwise engaging in a pattern of conduct designed to mislead, confuse, deceive and otherwise trick Hi-Lex into paying more for its services than Hi-Lex was obligated to pay.

81.     BCBSM's breach of its fiduciary duty has proximately caused substantial damages to Plaintiffs.

82.     BCBSM fraudulently concealed that it was charging the Hidden Fees, the amount of those fees, and that it was otherwise violating its legal obligations to Plaintiffs.

83. Hi-Lex did not discover the full extent of BCBSM's wrongful conduct until 2011.

## COUNT II
## PROHIBITED TRANSACTION UNDER ERISA

84. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs.

85. BCBSM is a fiduciary pursuant to 29 U.S.C. § 1002(21)(A) and a "party in interest" pursuant to 29 U.S.C. § 1002(14).

86. As a fiduciary and party in interest, BCBSM was prohibited from engaging in certain transactions as set forth in 29 U.S.C. § 1106.

87. BCBSM's conduct with respect to the Hidden Fees was a prohibited transaction because, among other things, (a) it constituted a transfer to, or use by or for the benefit of, BCBSM of Plan Assets, and (b) BCBSM dealt with Plan Assets in its own interest and for its own account.

88. BCBSM's violation of 29 U.S.C. § 1106 has proximately caused substantial damages to Plaintiffs.

89. BCBSM fraudulently concealed that it was charging the Hidden Fees, the amount of those fees, and that it was otherwise violating its legal obligations to Plaintiffs.

90. Hi-Lex did not discover the full extent of BCBSM's wrongful conduct until 2011.

## COUNT III
## VIOLATION OF THE ACT

91. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs.

92. BCBSM is a non-profit health care corporation governed by the Act.

93. Pursuant to the Act, BCBSM was required to disclose all "administrative costs . . . clearly and accurately in the contracts":

> (2) Relative to actual administrative costs, fees for administrative services only and cost-plus arrangements shall be in a manner that precludes cost transfers between subscribers subject to either of these arrangements and other subscribers of the health care corporation. Administrative costs for these arrangements shall be determined in accordance with the administrative costs allocation methodology and definitions filed and approved under part 6, and shall be expressed clearly and accurately in the contracts establishing the arrangements, as a percentage of costs rather than charges.

MCL 550.1211(2) (emphasis added).

94. The Act also prohibited BCBSM from distributing inaccurate or misleading statements concerning its services:

> (2) In order to induce a person to contract or to continue to contract with the health care corporation for the provision of health care benefits or administrative or other services offered by the corporation; to induce a person to lapse, forfeit, or surrender a certificate issued by the health care corporation; or to induce a person to secure or terminate coverage with another health care corporation, insurer, health maintenance organization, or other person, a health care corporation shall not, directly or indirectly:
>
> > (d) Make, issue, or circulate, or cause to be made, issued, or circulated, any estimate, illustration, circular, or statement misrepresenting the terms of a certificate or contract for administrative or other services, the benefits thereunder, or the true nature thereof.

MCL 550.1402(2)(d).

95. BCBSM, through its conduct alleged in this Complaint, violated its statutory obligations under the Act.

96. BCBSM's statutory violations have proximately caused substantial damages to Plaintiffs.

97.     Hi-Lex brings this count on behalf of itself and other aggrieved members.

98.     BCBSM fraudulently concealed the foregoing wrongful conduct.

99.     Hi-Lex did not discover the full extent of BCBSM's violations of the Act until 2011.

## COUNT IV
## HEALTH CARE FALSE CLAIMS ACT

100.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs.

101.    Hi-Lex is a health care insurer as defined by MCL 752.1009.

102.    Hi-Lex reimbursed BCBSM for health care services it paid on behalf of Hi-Lex's employees.

103.    The amount charged by BCBSM for paying the claims was false because the actual claims were less than the amount charged by BCBSM.

104.    BCBSM kept the difference between what it charged to Hi-Lex as claims cost and what it actually paid in claims, for itself.

105.    In doing so, BCBSM knowingly presented or caused to be presented claims which contained one or more false statements in violation of MCL 752.1009.

106.    BCBSM is therefore liable to Hi-Lex for the full amount of the payments made pursuant to MCL 752.1009.

107.    BCBSM fraudulently concealed the foregoing wrongful conduct.

108.    Hi-Lex did not discover the full extent of BCBSM's violation of MCL 752.1009 until 2011.

## COUNT V
## BREACH OF CONTRACT, AND ALTERNATIVELY, COVENANT
## OF GOOD FAITH AND FAIR DEALING

109.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs.

110.   The ASC's and Schedule A's are enforceable, binding contracts between Hi-Lex and BCBSM.

111.   BCBSM breached the contracts by (1) charging Hidden Fees not allowed under the ASC's and Schedule A's, (2) not reporting or otherwise disclosing the actual claims paid and administrative compensation it received, and (3) submitting false and misleading quarterly and annual settlement statements.

112.   BCBSM's breach of the contracts has proximately caused substantial damages to Plaintiffs.

113.   Alternatively, to the extent the Court finds the contracts allowed BCBSM to charge Hidden Fees, the amount charged by BCBSM is not set forth in the contracts and was instead unilaterally determined by BCBSM without disclosure to, or agreement with, Hi-Lex.

114.   To the extent the contracts allowed BCBSM to exercise its discretion as to the amount of the Hidden Fees, BCBSM had a duty to exercise that discretion in good faith and in a manner which dealt fairly with Hi-Lex and was consistent with the parties' objective, reasonable expectations.

115.   BCBSM breached its duty of good faith and fair dealing by, among other things:

(a)     Charging Hidden Fees unilaterally, secretly, and in bad faith,

    (b)     Setting an arbitrary and excessive fee,

    (c)     Failing to disclose or report the Hidden Fees,

    (d)     Submitting false and misleading quarterly settlements, annual settlements, and Form 5500's, and

    (e)     Otherwise acting in a manner that was in its best interests alone and not fair to Hi-Lex .

116.    BCBSM fraudulently concealed its breach of contract and breach of the duty of good faith and fair dealing from Plaintiffs.

117.    Hi-Lex did not discover the full extent of BCBSM's breach of contract and breach of duty of good faith and fair dealing until 2011.

## COUNT VI
## BREACH OF COMMON LAW FIDUCIARY DUTY

118.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs.

119.    In the event the court finds this case is not governed by ERISA, Hi-Lex pleads in the alternative the following common law cause of action.

120.    BCBSM was in a fiduciary relationship with Hi-Lex because, among other things, it had control over Plan Assets.

121.    As a fiduciary, BCBSM was required to, among other things, conduct itself in the best interests of Hi-Lex , as well as the participants and beneficiaries of the Plan, and fully disclose its actions and any compensation it was taking for its administrative services.

122.    BCBSM breached its fiduciary duty by, among other things:

    (a)     Charging the Hidden Fees;

    (b)     Failing to disclose the Hidden Fees;

(c)   Submitting false and misleading quarterly and annual settlement statements;

(d)   Submitting false and misleading Form 5500's;

(e)   Violating the Act;

(f)   Violating the Health Care False Claims Act; and

(g)   Otherwise engaging in a pattern of conduct designed to mislead, confuse, deceive and otherwise trick Hi-Lex into paying more for its services than Hi-Lex agreed to pay.

123.   As a proximate result of BCBSM's wrongful conduct, Hi-Lex has incurred substantial damages.

124.   BCBSM fraudulently concealed the foregoing wrongful conduct.

125.   Hi-Lex did not discover the full extent of BCBSM's breach of fiduciary duty until 2011.

## COUNT VII
## CONVERSION

126.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs.

127.   In the event the court finds this case is not governed by ERISA, Hi-Lex pleads in the alternative the following common law cause of action.

128.   As set forth above, BCBSM was in a position of trust and confidence with respect to Hi-Lex and Plan Assets.

129.   Hi-Lex delivered specific monetary funds to BCBSM, which were to be used to pay appropriate employee health care claims.

130.   BCBSM had an obligation to return funds not used to pay employee health care claims or other obligations properly due under the ASC's and Schedule A's.

131.    BCBSM used its position of trust and confidence to wrongfully divert some of the funds to its own use, inapposite of its contractual and fiduciary obligations.

132.    BCBSM's has refused to return all funds obtained by it as Hidden Fees.

133.    BCBSM's charging of Hidden Fees, as well as its retention of those fees and refusal to return them, constitutes wrongful dominion and control over property of Hi-Lex .

134.    As a proximate result of BCBSM's acts, Hi-Lex has incurred substantial damages.  In addition, Hi-Lex is entitled to treble damages pursuant to MCL 600.2919(a), as well as interest, costs and attorneys' fees.

135.    BCBSM fraudulently concealed the fact that it converted Plan Assets to its own use.

136.    Hi-Lex did not discover the full extent of BCBSM's conversion until 2011.

<u>COUNT VIII</u>
<u>FRAUD/MISREPRESENTATION</u>

137.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs.

138.    In the event the court finds this case is not governed by ERISA, Hi-Lex pleads in the alternative the following common law cause of action.

139.    BCBSM made material representations of fact to Hi-Lex, namely that it was charging a smaller administrative service fee than it was charging and that it was using Plan Assets to pay claims when it fact it was using a portion of those assets to pay Hidden Fees.

140.    The representations made by BCBSM were false when made.

141.   BCBSM knew that its representations were false when made, or at the very least, it made those representations recklessly.

142.   Alternatively, even if BCBSM did not knowingly or recklessly make the representations, it is nonetheless liable for innocent misrepresentation because BCBSM benefited from the false representations.

143.   BCBSM made the representations with the intention of inducing Hi-Lex's reliance and, in fact, Hi-Lex did reasonably rely upon the representations made by BCBSM.

144.   Plaintiffs have suffered substantial damages as a result of the misrepresentations made by BCBSM.

145.   BCBSM fraudulently concealed the foregoing wrongful conduct.

146.   Hi-Lex did not discover the full extent of BCBSM's fraud/misrepresentation until 2011.

## COUNT IX
## SILENT FRAUD

147.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs.

148.   In the event the court finds this case is not governed by ERISA, Hi-Lex pleads in the alternative the following common law cause of action.

149.   BCBSM was in a fiduciary relationship with Hi-Lex , and as such, had a duty of loyalty and honesty and was otherwise obligated to disclose any and all material facts regarding the self-insured program the parties were contracting for.

150.   BCBSM charged Hi-Lex Hidden Fees by skimming for itself Plan Assets that were supposed to be used to pay claims.

151.     BCBSM had an affirmative duty to disclose that (1) it was charging Hidden Fees, (2) the methodology for determining those fees, and (3) the amount of those fees.

152.     BCBSM did not disclose the foregoing, despite its duty to do so.

153.     BCBSM intended to induce Hi-Lex to rely upon the nondisclosure (that there were no additional administrative fees), and in fact, Hi-Lex did rely upon that nondisclosure.

154.     Hi-Lex suffered substantial damages as a result of BCBSM's failure to disclose the facts and circumstances surrounding the Hidden Fees.

155.     BCBSM fraudulently concealed the foregoing wrongful conduct.

156.     Hi-Lex did not discover the full extent of BCBSM's fraud until 2011.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that the Court to enter judgment in their favor and against BCBSM as follows:

A.     Ordering BCBSM to provide a full and complete accounting of all Hidden Fees received by it from Plaintiffs;

B.     Declaring that BCBSM breached its fiduciary duty and otherwise violated Michigan and federal law by (1) charging the Hidden Fees, (2) failing to disclose or report the Hidden Fees, and (3) submitting false and misleading quarterly settlements, annual settlements and Form 5500's;

C.     Awarding restitution to Plaintiffs of the Hidden Fees;

D.     Awarding treble damages and attorneys' fees pursuant to MCL 600.2919(a).

E.      Awarding monetary damages in the full amount of claims submitted by

BCBSM to Plaintiffs pursuant to MCL 752.1009.

F.      Awarding monetary damages, costs, interest and attorneys' fees (including

statutory attorneys' fees under ERISA) to the fullest extent of the law; and

G.      Awarding all other equitable or other relief to which Plaintiffs may be

entitled.

VARNUM LLP
Attorneys for Plaintiffs


Date:   June 13, 2010              By:     /s/ Aaron M. Phelps
                                           Steven P. Afendoulis (P36546)
                                           Perrin Rynders (P38221)
                                           Aaron M. Phelps (P64790)
                                   Business Address & Telephone:
                                           Bridgewater Place, PO Box 352
                                           Grand Rapids, MI, 49501-0352
                                           Phone:  (616) 336-6000
                                           Fax:  (616) 336-7000
                                           spafendoulis@varnumlaw.com
                                           prynders@varnumlaw.com
                                           amphelps@varnumlaw.com

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of all issues so triable.

VARNUM LLP
Attorneys for Plaintiffs


Date:   June 13, 2010          By:   /s/ Aaron M. Phelps
                                     Steven P. Afendoulis (P36546)
                                     Perrin Rynders (P38221)
                                     Aaron M. Phelps (P64790)
                               Business Address & Telephone:
                                     Bridgewater Place, PO Box 352
                                     Grand Rapids, MI, 49501-0352
                                     Phone:  (616) 336-6000
                                     Fax:  (616) 336-7000
                                     spafendoulis@varnumlaw.com
                                     prynders@varnumlaw.com
                                     amphelps@varnumlaw.com

4322846_2.DOC