1                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MICHIGAN
2                         SOUTHERN DIVISION

3
   BORROUGHS CORPORATION and
4  BORROUGHS CORPORATION EMPLOYEE
   BENEFIT PLAN
5
6                         Plaintiffs.

7       v.                          Case No. 11-12565

8
   BLUE CROSS BLUE SHIELD OF MICHIGAN
9
                          Defendants.
10

11 and

12
   HI-LEX CONTROLS INCORPORATED,
13 HI-LEX CORPORATION HEALTH AND WELFARE PLAN,

14      v.                          Case No. 11-12557

15
   BLUE CROSS AND BLUE SHIELD OF MICHIGAN,
16
                          Defendants.
17 _____/

18

19         PLAINTIFF'S MOTION TO COMPEL DISCOVERY

20      BEFORE MAGISTRATE-JUDGE PAUL J. KOMIVES
               United States District Judge
21         231 US Courthouse & Federal Building
               635 Lafayette Boulevard West
22                  Detroit, Michigan
               Wednesday, April 11, 2012
23

24

25

1   APPEARANCES:

2
    FOR THE PLAINTIFF:   AARON M. PHELPS
3                        PERRIN RYNDERS

4

5   FOR THE DEFENDANT:   JASON R. GOURLEY
                         MICHAEL RECHTIEN
6

7

8   COURT RECORDER:   EDDREY BUTTS

9

10  TRANSCRIBED BY:
    Carol S. Sapala, RMR, FCRR
11  313.961.7552
    www.transcriptorders.com
12

13

14

15

16

17

18

19

20

21

22

23

24

25

Plts. Second Motion To Compel Discovery 3-9-2012

1

2

3                    C O N T E N T S

4    _____

5    IDENTIFICATION                          PAGE

6    WITNESSES

7    None.

8    Plaintiff's Second Motion to Compel Discovery    4

9

10   Certificate of Court Reporter                    9

11

12

13                 E X H I B I T S

14

15   _____

16   IDENTIFICATION                        RECEIVED

17

18

19              None    Marked

20

21

22

23

24

25

Plts. Second Motion To Compel Discovery 3-9-2012

1        Detroit, Michigan

2        Wednesday April 11, 2012

3        1:02 p.m.

4        (The transcriber was not present

5        at this hearing)

6    THE COURT:  The Rule 30(b)(6) deposition that the

7   plaintiffs are desirous of taking, and it was noted that there

8   is a motion to quash with regard to that matter that is

9   scheduled for hearing on the 25th of April.

10    And so that issue, insofar as it appears on the motion

11   papers that are -- the motion to compel that is up today, is

12   kind of off the table for today and we'll have to await the

13   hearing on the 25th with regard to that motion to quash.

14    The other principle issue that is raised in the motion to

15   compel has to do with the plaintiff's desire to have the

16   defendant's conduct a search of their records with regard to

17   certain information that some 30 employees or former employees

18   of the defendant might, might, might have or relate to that

19   has to do with the access fee issue that's involved in this

20   case.  That issue, of course, is ripe for argument and for

21   decision.

22    So at this time then I'll ask counsel, when they come

23   forward, to place their appearances on the record.  And I will

24   ask counsel for the moving party.

25    And we have two plaintiffs here, Hi-Lex and Burroughs.

Plts. Second Motion To Compel Discovery 3-9-2012

1   And i would ask counsel for the plaintiffs to come forward to

2   the lectern to place his appearance on the file and to then

3   proceed with his presentation of his motion to compel.

4        Counsel?

5        MR. PHELPS:  Thank you, Your Honor.  Aaron Phelps on

6   behalf of plaintiffs.  Also with me is Perrin Rynders.

7        Your Honor, as you stated, this is the plaintiff's second

8   motion to compel discovery.  The issue today is our request

9   for production of communications likely to be principally any

10  communications discussing access fees.

11       The Court may recall from the prior hearing and the

12  briefing, the access fees are what the plaintiffs have alleged

13  were the hidden fees, hidden charges, that were charged to

14  them by Blue-Cross since 1994, not disclosed, not agreed to.

15       Naturally, as part of our initial discovery in this case,

16  back in September, we asked the defendant to produce

17  communications, whether they be with us or internally, that

18  discuss or relate to the access fees.  Within that would be

19  included emails that discussed why that they chose to set

20  about this access fee scheme, why they initiated access fees

21  instead of including the fees on the bills, why the contracts

22  were changed the way they were, why they'd been changed over

23  time, emails about disclosure or nondisclosure.

24       Communications internally by Blue-Cross that perhaps

25  discuss whether the fees should be disclosed to customers, any

Plts. Second Motion To Compel Discovery 3-9-2012

1    of their customers, including the plaintiffs.

2        Perhaps there are admissions within those communications

3    where a Blue-Cross representative acknowledges that he or she

4    doesn't even know about the access fees or there's an internal

5    directive inside of Blue-Cross to not disclose the access

6    fees.

7        It is, frankly, hard to imagine communications and

8    documents that would be more relevant to this case, a case

9    about hidden access fees, then the very communications within

10   Blue-Cross that discuss those access fees.

11       This is actually the second hearing we've had on this

12   issue.  At the first hearing, I believe it was early March, we

13   spent nearly three hours in a conference room, counsel for the

14   parties discussing this issue and trying to reach a resolution

15   short of a formal hearing.

16       And we came out and put on the record that we had reached

17   a framework for resolution; and the framework was that I would

18   provide a letter to opposing counsel detailing more

19   specifically the types of emails and communications we were

20   looking for.

21       The complaint we heard during the conference was that our

22   requests were too broad and too vague and so on.  So they

23   asked for more specificity and we agreed to provide that,

24   which we did on March 16 in a three-page -- four-page letter

25   specifically identifying 37 topics.

Plts. Second Motion To Compel Discovery 3-9-2012

1    As part of our agreement at the last hearing, Blue-Cross'

2   counsel was supposed to review that and cooperate with us and

3   communicate with us on how we could go about getting these

4   communications.

5    Never has Blue-Cross responded to this letter.  I've had

6   no communication with them regarding this issue.  Despite the

7   fact that we spent all that time together, we came to an

8   agreement.

9    I put the work into doing a letter to try to reach a

10  resolution on this issue.  They don't respond it to, they

11  haven't talked about it, they haven't offered any compromise,

12  haven't offered to provide any material that we have asked

13  for.

14   It appears at the last hearing it was simply a way to

15  delay this another several weeks, which was accomplished.

16  We're now five weeks later and we still don't have the emails

17  and communications we need.

18   Their response is principally two-fold.  One is they say

19  these are not relevant.  Two, they say it's too burdensome for

20  them to produce the emails.

21   While on the relevancy, I've already indicated the type

22  of documents that we want.  They want to boil this case down

23  to, well, the only thing that's relevant is whether we

24  disclosed it.  And we've given you the emails that show

25  whether we actually disclosed the fees to you.

Plts. Second Motion To Compel Discovery 3-9-2012

1      Well, the issue is, of course, much broader and much more
2  complicated then that.  Because communications internally that
3  say not to disclose something would not have been provided to
4  us, would not have had a name on them, would not have been and
5  were not produced by Blue-Cross.
6      And, yet, clearly, an internal admission not to disclose
7  the access fees for an admission that they weren't disclosed,
8  admissions that customers didn't understand the access fees
9  would be clearly relevant.
10      In fact, we've taken one deposition of an account manager
11 related to the Hi-Lex case, a Blue-Cross Account Manager, and
12 that account manager testified that she didn't know for many
13 years that there were access fees.
14      The fees were not only hidden from us, the customer, they
15 were hidden from the Blue-Cross Account Managers themselves.
16      So the idea that the working group, the folks in charge
17 of this access fee program at Blue-Cross don't have
18 communications where they discuss how and to what extent and
19 whether to discuss these access fees is ludicrous.  Of course
20 they do.
21      And clearly admissions on their part that they're not
22 disclosed, that people don't understand them would be highly,
23 highly relevant and probative to the issues in this case.
24 That's what the whole case is about.
25      So, again, they're not only directly relevant, but when

Plts. Second Motion To Compel Discovery 3-9-2012

1   you couple that with the, the broad civil discovery under the

2   Federal Rules under really any analysis, it's hard to imagine

3   how these are not at least discoverable, and in my view,

4   they're also clearly going to be admissible.

5       So that brings us then to their second and what I really

6   view is their final argument this idea that it's too

7   burdensome.

8       I'm sure -- it was in their response and I'm sure we'll

9   hear about it again today.  We already heard about it a little

10  bit at our pre-hearing conference, on how Blue-Cross has so

11  many employees, 7,000 employees, they have tremendous amount

12  of email and this is, you know, terribly burdensome for them

13  to produce what we've asked for.  There's really three

14  responses to that, Your Honor.

15      One is that large companies do not get a pass on civil

16  discovery.  It doesn't matter how big you are, you still have

17  to do discovery, you still have to produce relevant material.

18      Frankly, what we had -- they are in a better position to

19  do this discovery than a smaller company.  They have an army,

20  I'm sure of IT people and staff, who understands these issues

21  who can find these emails, can do the searches all internally.

22      Our clients have far fewer resources, less sophisticated

23  in the world of IT, but we've done the searches that they

24  want.

25      In some cases, our clients had to get additional software

Plts. Second Motion To Compel Discovery 3-9-2012

1   and add ons and things to do this, but we did it.

2       They asked us for emails, they gave us search terms.  We

3   went, we performed searches, we provided documents.  No

4   arguments from us on producing the documents that they've

5   requested.

6       So the simple fact that they're a large company is

7   irrelevant consideration regarding whether they actually have

8   to produce relevant material that they have.

9       Second, it wasn't apparently too burdensome for them to

10  do searches for the documents they wanted to find.

11      What was alluded to at our short conference before this

12  hearing was that they have done, in their view, a reasonable

13  search.  They've provided the documents that they think are

14  relevant.  Well, of course, that's not how discovery works.

15      I get to ask for the things that I want to prove my case,

16  and subject to supplementations, they have to provide the

17  documents that I have asked for.

18      They have flipped this completely around and they

19  unilaterally decided what they wanted to produce, the searches

20  they wanted to do.  They went and did those and then produced

21  documents that they think help their case, or in some cases

22  are just benign, but that's what they came up with.

23      Absent from their production are -- I go as far as to say

24  any.  I don't recall seeing any internal Blue-Cross

25  communications related to access fees.  And they have archived

Plts. Second Motion To Compel Discovery 3-9-2012

1   they say every email in their system since 2004.  Presumably

2   they have some emails prior to 2004.  But at any rate, at

3   least they have every email since 2004.

4       And the idea that there was not some internal

5   communication among the work group on the access fees, among

6   the actuary folks, among the senior account managers and sales

7   managers about access fees, you know, is incredible.  I mean

8   somebody came up with this program, somebody discussed it.

9   There was some internal communication.

10      Now, again, it wasn't widely disclosed in the company

11  because some of their account managers didn't know about it

12  and it certainly wasn't disclosed to the plaintiffs in these

13  cases.

14      But the upper level management types within Blue-Cross

15  certainly had some communication about it.  There's none.

16  None of that has been produced.  According to their papers,

17  they haven't even looked for that at all because it didn't

18  meet their criteria for what's relevant.

19      Your Honor alluded to the 30 or so folks that we've

20  identified.  What that was was a compromise that we offered

21  Blue-Cross.  They said, well, we have 7,000 employees.  And we

22  said, well, no problem.  You know you don't need to search

23  7,000 employees for relevant emails.

24      Based on your own documents, we know who the key people

25  are.  Based on your own witness list, we know who the key

Plts. Second Motion To Compel Discovery 3-9-2012

1    people are.

2        And you take 7,000 and you funnel it down to really what

3    amounts to a handful, you know, around 30 folks, all of whom

4    were either account managers for us on their witness list as

5    having knowledge about the case or were identified in

6    documents as involved in some capacity with the access fee

7    program.

8        Then we said use the search terms you gave us, flip it

9    around.  Your search terms, you use those and search all of

10   the emails and communications that relate to these 30 folks.

11   And they said no.  They won't do that.  It's too burdensome to

12   do that.

13       Well I don't know how that could be too burdensome when

14   they apparently searched all 7,000 employees to come up with

15   the emails that they did produce with their limited criteria.

16   So I fail to see why assertion 30 would be too burdensome.

17       Frankly, the options here are they just don't produce

18   anything that we've asked for, which is what they want.  Or to

19   do this what I consider a pretty reasonable fair compromise

20   which is actually less than what some of our clients have

21   done.

22       Plaintiff Burroughs, for example, did a search of all 80

23   or so of their employees using their search terms.

24       So if Burroughs can do a search of 80 employees, then I

25   think Blue-Cross ought to be able to handle 30 but, again,

Plts. Second Motion To Compel Discovery 3-9-2012

1    that was a compromise.  If they don't want to do that, then

2    fine, but you're still going to have to produce the documents.

3        If you don't want to use the reasonable search that we've

4    came up with, they can go through every one physically by hand

5    if they want, but they need to figure out a way that the Court

6    and we are satisfied is appropriate and captured all of the

7    relevant email and they need to produce them.

8        Timing is another critical issue, Your Honor.  As

9    unfortunately you know, we asked for this -- these documents

10   back in September.  We didn't actually figure out that they

11   had withheld this portion of email until around the First of

12   the year because they did produce some, so we were under the

13   impression they actually produced the email that we asked for.

14       When we figured out they had only produced what they

15   wanted to, you know, we, frankly, pretty immediately filed the

16   motion which led to the hearing in March.  As I said, that was

17   delayed resolution based on their, you know, suggested

18   compromise which they had never followed up on.

19       Now here we are in the middle of April and we still have

20   these documents and discovery closes, I believe, in June and

21   we're being forced to take depositions without the benefit of

22   having these key documents.

23       So we ask that the Court order that that they immediately

24   produce the documents that have been requested, and we'd also

25   ask that the Court award costs and attorneys fees to

Plts. Second Motion To Compel Discovery 3-9-2012

1   plaintiffs to having to bring this motion for a second time.

2   Thank you.

3        THE COURT:  I just -- are you through?

4        MR. PHELPS:  Yes, I am.

5        THE COURT:  I want to ask you one question, but I

6   don't -- are you through with your presentation?

7        MR. PHELPS:  Yes, I am.

8        THE COURT:  My question is this.

9        I think in your motion papers with regard to the

10  relevancy question, you do reference the fact that one of your

11  causes of action does involve intent.  I think it's one of the

12  causes of action with regard to fraud, I think.

13       MR. PHELPS:  Yes.

14       THE COURT:  Because the, the comment was made in

15  opposition to the motion that, well, intent has nothing to do

16  with this case.  But I think your position is well it does, at

17  least with regard to one cause of action.

18       Do I understand correctly what your position is?

19       MR. PHELPS:  You understand part of the position on that

20  exactly, Your Honor.  There's two specific reasons that's

21  relevant.

22       One is what you've outlined, that we do have a state

23  common law fraud claim that clearly has intent as an element.

24       And the judge in this -- Judge Roberts, has ordered us to

25  do discovery on these state law claims.  We've pointed that

Plts. Second Motion To Compel Discovery 3-9-2012

1    out, read the order into the record the last time.

2         So there is a claim for discovery purposes for common law

3    fraud.  Intent's an element.  We need discovery on that.

4         In addition, though, under ERISA, the claims that are

5    presently pending before the Court that even Blue-Cross

6    acknowledges are pending, we have the statute of limitations

7    issue.  They've asserted the statute of limitations as an

8    affirmative defense.

9         The statute of limitations -- the time period under that

10   federal statute depends on whether there has been fraud or

11   concealment.

12        So in order to apply the statute of limitations, the

13   Court will necessarily need to determine whether there's been

14   fraud on the part of Blue-Cross or whether there's been

15   concealment on the part of Blue-Cross.

16        So an element of the statute of limitations issue is also

17   to some degree intent or concealment, what was going on at

18   Blue-Cross and about this issue.

19        If there were emails where they said let's not disclose

20   the access fees or if somebody suggested we should make a

21   better disclosure of the access fees and somebody else at

22   Blue-Cross said, no, we don't want to do that, clearly that

23   goes right to the heart of concealment, fraud, and that's a

24   direct issue under both the ERISA federal claims and under the

25   state common law claim.

Plts. Second Motion To Compel Discovery 3-9-2012

1      THE COURT:  Okay.

2      MR. PHELPS:  And one last note that I was reminded of.

3  You made the comment earlier about some of these folks being

4  retired.

5      They weren't retired, of course, when they sent these

6  emails.  They have the emails.  The fact that some of these 30

7  folks are no longer with Blue-Cross is really an irrelevant

8  point because they, Blue-Cross, still has the emails that

9  those people sent while they were employees.

10     And, in fact, some of these former employees were on

11 their witness list, have been deposed, notwithstanding the

12 fact they're no longer employed there.  So retired or not, the

13 emails exist and are relevant.

14     THE COURT:  It's your motion, so you'll have a right of

15 rebuttal.

16     MR. PHELPS:  Thank you, Your Honor.

17     THE COURT:  I'll invite counsel for Blue Cross-Blue

18 Shield to come forward, place his appearances on the record

19 and to make his presentation with regard to this motion.

20     Counsel?

21     MR. GOURLEY:  Morning, Your Honor.  Jason Gourley on

22 behalf of Blue Cross-Blue Shield of Michigan.  I also have

23 with me Matthew Rechtien.

24     Your Honor, I'd like to start by addressing the last

25 issue that Mr. Phelps addressed in response to your question

Plts. Second Motion To Compel Discovery 3-9-2012

1  about discovery with respect to a claim that might include

2  intent.

3      There was a lengthy discussion of how it was imperative

4  that you have discovery on this state law claim.

5      One thing that Mr. Phelps forgot to inform the Court is

6  that the state law claims have been dismissed in this matter.

7      So I don't know how he intends to get discovery on those

8  claims since they've been dismissed and Rule 26 does not allow

9  discovery of dismissed claims.  So that issue, I think, is, is

10 taken care of just by that simple fact.

11     Secondly, I believe that Mr. Phelps realizes a little bit

12 on some revisionist history, so I'd like to just walk through

13 it a little bit.

14     This is not an instance where Blue-Cross has not done

15 anything to try to find the documents that Mr. Phelps has

16 requested.  In fact, the opposite has happened.

17     We began this case, as he said, month and months ago.

18 And during -- since the case was initiated, plaintiffs have

19 engaged in what can only be perceived at least as a somewhat

20 oppressive approach to discovery and this is just the latest

21 step in that.

22     To date for Hi-Lex and Burroughs, they've served over 100

23 requests for admissions, 90 interrogatories, 200 requests for

24 production.  Plus, if you count their most recent 30(b)(6)

25 notice which they also included a *duces tecum* request, that

Plts. Second Motion To Compel Discovery 3-9-2012

 1  would be another 100 categories because the *duces tecum* had

 2  58.

 3      And then this is accommodation that Mr. Phelps referred

 4  to that he gave to us after the last hearing featured 37 more

 5  document requests.  So we're pushing, you know, 350 document

 6  requests.

 7      Blue-Cross has done their best to respond to all of those

 8  discovery requests to institute a search that produced the

 9  documents that he was looking for.

10      I'm sure Your Honor's familiar with the search; we put it

11  in our papers.  Blue-Cross started with 370 emails.  They

12  instituted a search that targeted -- well, first of all, they

13  did a review of all the paper files for all of the individuals

14  involved in servicing the Hi-Lex and Burroughs account.  That

15  would turn up the most relevant documents in this case, which,

16  of course, would be contract documents, communications back

17  and forth, give and take, quarterly settlements, annual

18  settlements and, also included disclosures of the access fees

19  in what's called Blue Reports where there's a pie chart that

20  specifically sets forth for a given year this is the amount of

21  access fees.

22      All of those documents were, were searched, found,

23  produced.  In fact, those were produced with initial

24  disclosures.  We didn't even wait for discovery requests.  We

25  produced those early and that was a mutual agreement between

Plts. Second Motion To Compel Discovery 3-9-2012

1   the parties, but that was done very early on in the process.

2       In terms of the email search, Blue-Cross instituted to

3   search 370 emails.  They targeted any documents that would

4   have been exchanged using searches for Hi-Lex and Burroughs.

5   Of course, that would show up in email address, names, so you

6   know it would be at Hi-Lex or at Burroughs.  It included a

7   search of all of the main email accounts for the people who

8   serviced the Hi-Lex Burroughs account.  That created universal

9   documents of 91 gigabytes.

10      We then did an intense review of all of those documents

11  and produced thousands of responsive documents.

12      Now also during that process, we narrowed the search by

13  using the set of key terms.  It's interesting that Mr. Phelps

14  wants to rely on his use of the key terms as showing that his

15  search was reasonable because he used ours.

16      We, we used a set of terms, 12 I think, annual

17  settlement, annual renewal, value of blue, access fees, AAF.

18  These were all discussed with counsel; he knows them.  It was

19  targeted to produce documents that, as he's searching for,

20  discussed anything having to do with access fees, charging,

21  disclosing, anything, that was done and that produced the

22  universe of documents that we've provided to counsel.

23      Now as to the relevancy argument, in his brief,

24  Mr. Phelps uses I think three basic areas to justify the

25  relevancy of documents internal to Blue-Cross that he claims

Plts. Second Motion To Compel Discovery 3-9-2012

1    might show a discussion of access fees or some sort of

2    nefarious scheme to hide them from customers and also to

3    justify his request for documents regarding access fees from

4    other Blue-Cross customers.

5        Those three things interestingly have one thing in

6    common; and that is, they're all limited to information

7    regarding the plaintiffs.  He says the relevancy is supported

8    by these following facts or inquiries from him.

9        Blue-Cross charged access fees without prior

10       disclosure to or agreement from plaintiffs.

11       Blue-Cross did not fully disclose the amount

12       of access fees charged to plaintiffs.

13       And BCBS misrepresented access fees had not

14       been charged are reporting certain amounts

15       charged to plaintiffs as actual claims paid.

16       I think he hit on what our relevancy argument is.  This

17   case, at the end of the day, deals with whether Blue-Cross,

18   under the contract, had the ability to charge the access fees.

19       Hi-Lex and Burroughs had knowledge of those access fees,

20   whether they continued to pay them after they had knowledge of

21   those access fees.

22       Now there was some discussion of, well we need this

23   discovery, Your Honor, because we have to respond to an early

24   motion for summary.

25       And in our meeting before the -- before the hearing, Your

Plts. Second Motion To Compel Discovery 3-9-2012

1  Honor brought up a point and asked -- you asked me I assume

2  your, your motion's going to focus on these disclosures that

3  you say were produced in your email search.

4      They're communications between Blue-Cross and Hi-Lex and

5  Burroughs where Blue-Cross discloses the access fees; you're

6  going to rely on that for your motion for summary.  That is

7  true.

8      Now what's interesting is that any internal emails from

9  Blue-Cross between Blue-Cross individuals, that's not going to

10 be relevant to refuting whether or not the disclosures were

11 actually made.

12     I mean, the plain fact of the matter is the documents are

13 there.  We're relying on actual documents, actual emails,

14 actual value blue reports that have the disclosures there.

15     Even if there was some sort of nefarious email or

16 something, which really I highly doubt there is because we've

17 done extensive searches, that email is irrelevant, if later on

18 down the road, Blue-Cross says here's the access fees or if

19 every Blue-Cross individual working on the Hi-Lex Burroughs

20 file says here, you know, here are the access fees for the

21 year.

22     In fact in this case, we have an internal document which

23 is called a Customer Confirmation Notice that was presented to

24 a Hi-Lex individual where specifically a Blue-Cross

25 representative discussed the fact that access fees were going

Plts. Second Motion To Compel Discovery 3-9-2012

1   to be charged, filled out a confirmation notice with Hi-Lex

2   representatives and they acknowledged that.

3        Now, you know, a wild goose chase into a conspire theory

4   to try to drum up all these emails is just not relevant.

5        I mean what's relevant is the communications with respect

6   to the access fees between the parties and we've tailored a

7   search that has produced those, those relevant documents.

8        Now in terms of burdensome, the search being burdensome,

9   first of all, Mr. Phelps just ignores the fact that we have

10   done a search already.  Part of the reason the second search

11   is burdensome is because we've already done a search to

12   produce relevant documents.

13        And his argument is interesting but a bit circular.  He

14   says, well they did it already so it can't be that burdensome,

15   so -- well do it again.

16        Well the original search was burdensome.  I mean we, we

17   tried to institute a search that was as reasonable as we could

18   but it was still extremely burdensome.  It took many, many

19   hours of time as well as, you know many, many hours of

20   attorney review.

21        We culled through 91 gigs of documents.  It was not an

22   effort to avoid or obfuscate the discovery, it was the exact

23   opposite.

24        Now he's not happy with the results because, for the most

25   part, it turned up documents showing disclosure.  And you know

Plts. Second Motion To Compel Discovery 3-9-2012

1    he claims, well, they only want to produce what is helpful to

2    them.

3         Well, you know, he wants what's helpful to him, we all

4    do, that's what litigation is about.  Okay.  But it doesn't

5    mean that he can get free range in discovery in the things

6    that are irrelevant.

7         Also what's interesting here is that I guess I'd like to

8    use his -- I'd like to use plaintiff's original search as a

9    baseline for an analysis of what a reasonable search in this

10   case is.

11        We also served discovery requests early in this case

12   seeking emails and electronic documents as well.

13        And we were originally notified by plaintiff's counsel

14   that their original search was to simply ask the principle

15   plaintiff's representatives to send them what they thought was

16   relevant.  They didn't even do a search.  They didn't use key

17   words, they just let the litigants themselves decide what was

18   relevant.  Obviously, that was disconcerting to Blue-Cross.

19        So we -- when pressed, plaintiff's counsel also admitted

20   that given the way their email system was set up, that there

21   was a possibility that certain emails had been deleted because

22   if too many emails get on the system, it automatically deletes

23   them to make space.  Again, we were wondering how is this --

24   how is our search not okay, but they're deleting emails and

25   that's okay.

Plts. Second Motion To Compel Discovery 3-9-2012

1    Then plaintiff's counsel also admitted they didn't do any

2  key word searches.  We specifically had to request the key

3  word searches and the only searches they did were the ones

4  Blue-Cross had originally used on their own documents to

5  produce responsive documents to the plaintiff.

6    I mean three, four, five steps down the road, the only

7  meaningful search of plaintiff's documents happened because

8  they used the same search terms and same process they are now

9  opposing here.  It was reasonable for them, but now they're

10 claiming -- for them to use it as a search, but now they're

11 claiming it's not reasonable either.

12   And on top of the fact that they're searching irrelevant

13 documents, I just don't think that it is appropriate for

14 Blue-Cross to bear yet another burden when it's not -- it

15 hadn't been reciprocated.

16   The reason a lot of this came up in the first place is a

17 lot of our concerns about their first search is that when we

18 got their document responses, that their documents -- response

19 to our requests, they didn't have many of the same

20 communications that were in our production to them.

21   Interestingly, some of them were emails that attached

22 Blue Reports or other documents that could be used to show

23 disclosure of the access fees.  Now I don't know if that was

24 select production.  Mr. Phelps has claimed maybe we had

25 selective production.  We haven't.  But it's, it's happened on

Plts. Second Motion To Compel Discovery 3-9-2012

 1  both sides, that's what started this discussion in the first

 2  place.

 3      On top of that, you know, those documents that were

 4  disclosed and not produced in Mr. Phelps' original set of

 5  documents showing disclosure, he also happened to leave off

 6  the complaint a valuable Blue Report that was attached to an

 7  annual settlement that he did attach to the complaint.  So

 8  there's a little bit of gamesmanship maybe, but I think it's

 9  important to look at it all on a broader level.

10      A couple of other things that I wanted to address.  One

11  is the concept of seeking information about Blue-Cross's

12  dealings or access fee communications addressing access fees

13  with other customers.

14      Again I think this goes back to my original point and

15  that's that Blue-Cross' dealings with customers, first of all,

16  are proprietary, an important part of the business task force.

17      Blue-Cross don't necessarily want to open the doors to

18  other customers for lots of reasons, not the least of which is

19  maybe the other Blue-Cross customers don't want competitors or

20  other people seeing the documents.

21      But the other reason that we're particularly worried

22  about that in this case is that we conducted third-party

23  discovery through a subpoena to a third-party benefits agent.

24      And in response to that, received emails that showed that

25  Mr. Phelps was at least communicating with this third-party

Plts. Second Motion To Compel Discovery 3-9-2012

1   agent in an effort to find potential other plaintiffs for

2   these cases.

3       And you know on the face of it, it's not relevant but,

4   again adding on to that, the possibility that just using this

5   as an avenue to find additional plaintiffs, I mean, I just

6   don't think that it's proper.

7       Again that end of the day, whether Blue-Cross disclosed

8   access fees to Joe Blow down the street isn't going to win the

9   day for plaintiffs.  It's going come down to, strictly

10  speaking, whether or not there was disclosure made to

11  Burroughs or to Hi-Lex.  That same concept applies to the

12  statute of limitations argument.

13      I mean, whether there was, you know, whether there was

14  disclosure is going to be the key issue in triggering or not

15  triggering the statute of limitations and proving or not

16  proving fraudulent concealment.

17      We already produced documents to that extent.  He has

18  them and those are the only relevant facts to that point.

19      So for those reasons, we would ask that the Court accept

20  the search that Blue-Cross's already performed and deny the

21  plaintiff's motion.

22      THE COURT:  Thank you, counsel.

23      All right.  Well, the motion is taken under advisement to

24  the extent that it deals with the Rule 30(b)(6) matter because

25  that's -- we'll await the motion to quash hearing on the 24th.

Plts. Second Motion To Compel Discovery 3-9-2012

1    The motion is granted with regard to remainder of the

2    motion.  And that the order will provide that the discovery

3    should be furnished by the defendant -- that the discovery be

4    furnished -- would be discovery that was referred to in your

5    most recent letter to the defendant, so I will ask to you

6    check with my law clerk after the hearing to make sure that we

7    have a copy of that available.

8    I will not award any costs at this time, but we'll permit

9    the plaintiffs to renew requests for costs if the discovery

10   that's ordered is not provided by the defendant.

11   I'll put a time limit this will take some time to go

12   through this process.  So I'll say 21 days for -- and that

13   the, the order, of course, will provide that the, the, the

14   parties as are white a square parties are quite aware

15   objections to the order can be lodged.  If objections are

16   lodged, you have 14 days from receipt of the copy of order,

17   then it will be up to the district judge rule on those

18   objections.  But that's the ruling of the Court.

19   In making that ruling, I conclude that under the

20   discovery rule of relevancy, whether it's relevant to a claim

21   or defense that the information being sought and being ordered

22   by the Court is relevant in two respects.

23   First to the question of intent with regard to the state

24   law cause of action involving fraud and also involving the

25   statute of limitations issue with regard to the ERISA claim.

Plts. Second Motion To Compel Discovery 3-9-2012

1    So that's my ruling.  And I believe that it is -- it meets the

2    test of relevancy under the discovery rules.

3         And that I conclude at this time that I have not been

4    persuaded that there is an undue burden placed upon the

5    defendant to do this.

6         And, of course, the discovery being sought would be

7    sought by the defendant and in accordance with the search

8    terms that the defendant has previously provided to plaintiff

9    and that may be referred to in your most recent letter.

10        So that's the ruling of the Court.  And so we'll try to

11   get an order out on this as quickly as possible.  Okay.

12        Court's in recess at this time and the recording -- the

13   transcript will be placed -- not the transcript, but the

14   recording will be placed in the files and records of the

15   court.  Thank you.

16        (Whereupon this hearing was then concluded at 11:13 a.m.)

17                    CERTIFICATE OF TRANSCRIBER

18

19    I do hereby certify that the foregoing is a correct

20   transcription from the digital sound recording of proceedings

21   in the above-entitled matter on the date hereinbefore set

22   forth and has been prepared by me or under my direction

23   to the best of my ability.

24

25   s/Carol S. Sapala, FCRR, RMR          April 20, 2012