# EXHIBIT A

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF BAY

**CITY OF BAY CITY,**

               Plaintiff,

v.

                              Case No.:  09-3427-CL
                              HON. KENNETH W. SCHMIDT

**BLUE CROSS AND BLUE SHIELD OF
MICHIGAN**, a Michigan non-profit health
care corporation,

               Defendant.

---

| | |
|---|---|
| **WILLIAM H. HORTON** (P31567)<br>**ELIZABETH A. FAVARO** (P69610)<br>Attorneys for Plaintiff<br>Tenth Floor Columbia Center<br>101 West Big Beaver Road<br>Troy, Michigan 48084-5280<br>(248) 457-7000 | **LEO A. NOUHAN** (P30673)<br>Attorney for Defendant<br>600 E. Lafayette, Suite 1925<br>Detroit, Michigan 48226-2998<br>(313) 983-2554 |

---

### DEFENDANT'S RESPONSE TO PLAINTIFF'S
### FIRST DISCOVERY REQUESTS TO DEFENDANT

---

     **NOW COMES** Defendant, Blue Cross Blue Cross Shield of Michigan

("BCBSM"), and for its Response states as follows:

**REDACTED**

**CONFIDENTIAL**

REDACTED

CONFIDENTIAL

5.     Do you claim any person disclosed, discussed or otherwise informed Plaintiff orally that Defendant is or was charging Plaintiff or retaining from Plaintiff any fee other than an Administrative Fee, Estimated Hospital Prepayment and Stop Loss Coverage identified on Schedule A? If so, identify that person by name, title and current address and specifically state what was said to Plaintiff and when. Produce all supporting documents.

**ANSWER: Yes. On July 22, 1994, the BCBSM sales representative, Nancy Mueller Greve, had a meeting with Bay City Finance Director, Deborah Davis, at which time Retention reallocation was described and explained. Ms. Mueller-Greve explained how the City's fixed administrative rate would be decreased for the renewal in 1995 and that there would be a corresponding increase in the costs of hospital claims to account for provider access fees, contingency and subsidies. According to the Customer Confirmation Notice prepared and signed by Nancy Mueller Greve, the City Finance Director like the lower costs for administration and stop loss and was very happy with BCBSM. The City Finance Director was pleased with BCBSM. See attached Retention Reallocation Customer Confirmation Notice.   BCBSM also discussed the inclusion of ASC access fees with the Plaintiff or the Plaintiff's agent during the 2008 annual settlement and at the 2009 renewal.**

6.     For each year from 1994 to the present, please state the total amount of the ASC Access Fee charged by Defendant to Plaintiff. Produce all supporting documents.

CONFIDENTIAL

REDACTED

7.      State the names and current addresses of the BCBSM account manager and underwriter for Plaintiff for the years 1994 through the present.

REDACTED

8.      Do you admit that the Master Contract, any Schedule A, or any other document provided to Plaintiff does not state the amount of the ASC Access Fee, OTG, contingency, or Provider Network Fee or a method by which they can be calculated?

REDACTED

9.      If your response to the above request is anything but an

4

CONFIDENTIAL

unequivocal "yes," please:

> A.  State the specific facts that support your answer;
>
> B.  Identify by name, current address and title all persons with knowledge of the facts that you claim support your answer; and
>
> C.  Produce all documents that support your answer.

**ANSWER:** **At the presentation of the Annual Settlement with Plaintiff for years 2007, 2008 and the renewal for 2009, the BCBSM marketing representative presented the County or its agent with its Settlement package.  The package included a Value of Blue Report in a pie chart format. This Report disclosed the total access fees paid by the County net of any applicable stop loss credits.**

**In addition, the Master Contract and the Schedule A's put the Plaintiff on notice of the fact that BCBSM would be adding these charges to its hospital claim costs,  The audit provisions in the Master Contract would have enabled Plaintiff to determine the amount of access fees paid at any time.**

REDACTED

11.  Is Defendant currently charging Plaintiff an ASC Access Fee, OTG, contingency or Provider Network Fee?  If so, what is the amount?  Produce all documents that support your answer.

CONFIDENTIAL

5

REDACTED

CONFIDENTIAL

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE CITY OF BAY

**CITY OF BAY CITY,**

                Plaintiff,

                                        Case No. 09-3427-CL
                                        Hon. Kenneth W. Schmidt

v.

**BLUE CROSS BLUE SHIELD OF
MICHIGAN,** a Michigan non-profit
Health care corporation,

                Defendant.

---

| | |
|---|---|
| **WILLIAM H. HORTON (P31567)**<br>**ELIZABETH A. FAVARO (P69610)**<br>**Attorneys for Plaintiff**<br>Tenth Floor Columbia Center<br>101 West Big Beaver Road<br>Troy, Mi 48084-5280<br>248-457-7000 | **LEO A. NOUHAN (P30763)**<br>**Attorney for Defendant BCBSM**<br>600 E. Lafayette, Suite 1925<br>Detroit, MI  48226<br>313-983-2554 |

---

## DEFENDANT'S RESPONSE TO PLAINTIFF'S
## SECOND DISCOVERY REQUESTS

        Defendant, Blue Cross Blue Shield of Michigan ("BCBSM") responds to the Plaintiff's Second Discovery Responses to Defendant as follows:

        1.      In response to paragraph 12 of Plaintiff's complaint, you stated that "a number of internal measures were taken to insure disclosure of retention reallocation." In that regard, please:

        A.      Identify all such "measures";

        B.      Identify persons with personal knowledge regarding the "measures"; and

**CONFIDENTIAL**

C.   Produce all documents which support your answer.

**ANSWER:**  In 1994, BCBSM assembled a Retention Reallocation Work Group to study, organize and implement this new pricing strategy for its Local ASC customers.   BCBSM employee Cynthia Garofali was charged with the responsibility to collect the Customer Confirmation Notices from the sales areas to insure and document the required meetings regarding retention reallocation with ASC customers.  Ms. Garofali's work group records and the documents referenced below are already in the possession of Plaintiff's counsel.

Disclosure of this new arrangement was achieved in the following ways:

1. New language was developed to be included in ASC master contracts as follows:

   > *The Provider Network Fee, contingency, and any cost transfer subsidies or surcharges ordered by the State Insurance Commissioner as authorized pursuant to 1980 P.A. 350 will be reflected in the hospital claims cost contained in the Amounts Billed.*

2. A simple brochure was developed and distributed to self funded customers to explain the new arrangement.

3. BCBSM sales and underwriting employees were trained and educated about the new arrangement.

4. The marketing representative for each Local ASC group would meet with the customer representative, explain the new arrangement and answer any questions.  Frequently asked questions were prepared to assist marketing representatives to respond to customer inquiries.

CONFIDENTIAL

5. A Notice of Disclosure was to be signed and submitted by the BCBSM marketing representative evidencing that the customer meeting on retention reallocation had occurred and documenting any customer concerns or problems with the new arrangement.

6. New language was added to the Schedule A as follows: *Hospital claims costs will reflect certain charges for provider network access, contingency and other subsidies as appropriate.*

7. New internal reports were developed to track ASC access fees and enable BCBSM marketing representatives or underwriters to disclose the amount of ASC access fees charged if the customer requested such reports on a regular or incidental basis.

8. Eventually, Talking Points were developed by BCBSM as a more detailed disclosure of the fees was requested by customers groups.

Documentation of these methods of disclosure are already in the possession of Plaintiff's counsel.

2.     State all facts which support your Affirmative Defense No. 2 that Plaintiff's claim is barred by the applicable statute of limitations.  Produce any documents which support this affirmative defense and state the names and current addresses of all witnesses who have personal knowledge regarding this affirmative defense.

**ANSWER: Since Plaintiff is seeking damages back to 1994, it is the position**

**CONFIDENTIAL**

**of BCBSM that Plaintiff's claims would be limited by the applicable statute of limitations as to each claim.**

3. State all facts which support your Affirmative Defense No. 3 that Plaintiff's damages are the result of its own failure to exercise reasonable oversight of its health care plan through the invocation of its right under the Master Contract to audit claims or to request additional information or financial reports from Defendant. Produce any documents which support this affirmative defense and state the names and current addresses of all witnesses who have personal knowledge regarding this affirmative defense.

**ANSWER: The affirmative defense is self explanatory. Since Bay City never performed an audit for the purpose of verifying the ASC access fees, the factual support for this defense is therein established. In addition, BCBSM has no evidence that Bay City ever asked BCBSM for any itemization of the access fees that were being added to its hospital claim costs in accordance with provisions set forth in Article III of the ASC and the language of the annual Schedule A's. Current BCBSM marketing representative John Anthony will testify as to the content of BCBSM's marketing file for Bay City.**

4. State all facts which support your Affirmative Defense No. 4 that Plaintiff has acquiesced and agreed to the payment of the ASC Access Fees. Produce any documents which support this affirmative defense and state the

**CONFIDENTIAL**

4

names and current addresses of all witnesses who have personal knowledge regarding this affirmative defense.

**ANSWER:  By its execution of the ASC Master Agreement, annual Schedule A's and payment of Amounts Billed, Plaintiff agreed to and accepted the charging of ASC Access fees to its qualifying hospital claims.   This arrangement was explained to the group in July 1994 when BCBSM Marketing representative Nancy Mueller-Greve met with Bay City Finance Director, Deborah Davis, prior to the initiation retention reallocation.  She explained that under the ASC arrangement there would be access fees added to the City's hospital claims in addition to the fixed administrative fees charged on a monthly basis.  Retention reallocation was acceptable to the City and its subsequent execution of annual Schedule A's and the ASC is evidence that the City agreed and acquiesced to retention reallocation as the basis for its payment of administrative services from BCBSM.**

5.    State all facts which support your Affirmative Defenses Nos. 4, 5, 6, 7 and 10 that Plaintiff is estopped from claiming access fees were wrongfully collected and not disclosed. Produce any documents which support these affirmative defenses and state the names and current addresses of all witnesses who have personal knowledge regarding these affirmative defenses.

**ANSWER:  By its execution of the ASC Master Agreement, annual schedule**

5

**CONFIDENTIAL**

A's and payment of Amounts Billed, Plaintiff agreed to and accepted the charging of ASC Access fees to its qualifying hospital claims. In addition, when Nancy Mueller-Greve met with Deborah Davis prior to the initiation of the retention reallocation, he explained that under the ASC arrangement there would be access fees added to hospital claims in addition to the fixed administrative fees charged on a monthly basis. At no time did the Plaintiff ask that retention reallocation be ceased but rather consistently paid the fees, without objection. The Plaintiff's silence induced BCBSM to believe that the City consented to the fees; BCBSM justifiably continued to charge the fees based upon BCBSM's understanding that the City consented to the fees, and; now, if allowed, the City's failure to raise the claim since at least 1994 may result in a potential and significant liability to BCBSM if BCBSM is compelled to return the ASC access fees. By Plaintiff's payment of the fees without objection, BCBSM was induced into meeting its obligation to pay the OTG subsidy, fund its reserves and support and maintain its provider networks by collection of the access fees from the Plaintiff and other self funded customers through its contractual arrangements. Former VP Chief Actuary, John Dunn, will testify about BCBSM's reliance on the payment of ASC access fees.

      6. State all facts which support your Affirmative Defense No. 8 that Plaintiff failed to mitigate its damages. Produce any documents which support this affirmative defense and state the names and current addresses of all

6

**CONFIDENTIAL**

witnesses who have personal knowledge regarding this affirmative defense.

**ANSWER:** BCBSM's ASC contract and annual Schedule As disclosed that the fees were being added to the City's hospital claim costs. The amount of the access fees retained since plan year 2007-2008 was disclosed through the Value of Blue Reports that were part of the 2008 Annual Settlement. There has also been reference to the addition of access fees on the financial statements included in the Annual settlements in 2007 and recently in 2009. Specific discussions about the access fees occurred in 1994 at the beginning of the ASC arrangement between BCBSM and Bay City. Nancy Mueller-Greve will testify that she met with Deborah Davis in July 1994 prior to the initiation of retention reallocation, and explained that under the ASC arrangement there would be access fees added to hospital claims in addition to the fixed administrative fees charged on a monthly basis. At no time did the Plaintiff ask that the retention be ceased nor was an audit ever requested to verify the amount of access fees being charged and retained by BCBSM. Current BCBSM marketing representative, John Anthony will testify about the presentation of the Value of Blue reports to Bay City . Sarina Fulgiam-Thomas or Gloria Vanderheyden will testify that Bay City never requested an audit for the purpose of verifying the amount of access fees included in the City's hospital claims. To the extent that Angela Garner or any other representative of P.E.B.S. was involved in receiving reports from BCBSM on behalf of Bay City, she may testify about documentation from and

CONFIDENTIAL

communications with BCBSM on access fees for Bay City.

      7.    State all facts which support your Affirmative Defense No. 9 that Plaintiff is barred from maintaining this action based upon the doctrine of waiver. Produce any documents which support this affirmative defense and state the names and current addresses of all witnesses who have personal knowledge regarding this affirmative defense.

**ANSWER:** BCBSM's ASC contract and annual Schedule As disclosed that the fees were being added to the City's hospital claim costs. The amount of the access fees retained since plan year 2006-2007 was disclosed through the Value of Blue Reports that were part of the Annual Settlement. There has also been reference to the addition of access fees to hospital claims included in the Annual Renewals. Specific discussions about the access fees occurred in 1994, prior to the implementation of retention reallocation as discussed in BCBSM's response to Discovery Request No.4 above. At no time since 1994, did the Plaintiff ask that the retention be ceased nor was an audit ever requested to verify the amount of access fees being charged and retained by BCBSM. The knowledge of the fees and the Plaintiff's course of performance by consistently paying the fees constitutes a waiver of any claims that the fees were not authorized by the contract. Current BCBSM marketing representative, John Anthony will testify about the presentation of the Value of Blue reports to Bay City. Sarina Fulgiam-Thomas or Gloria Vanderheyden

**CONFIDENTIAL**

will testify that Bay City never requested an audit to verify the amount of access fees included in the City's hospital claims.  To the extent that Angela Garner or any other representative from P.E.B.S. was involved in receiving reports from BCBSM on behalf of Bay City, she may testify about documentation from and communications with BCBSM on access fees for Bay City.

8.    State all facts which support your Affirmative Defense No. 11 that Plaintiff is barred from maintaining this action based upon the doctrine of laches.  Produce any documents which support this affirmative defense and state the names and current addresses of all witnesses who have personal knowledge regarding this affirmative defense.

**ANSWER:** BCBSM's ASC contract and annual Schedule As disclosed that the fees were being added to the City's hospital claim costs.  The amount of the access fees retained since plan year 2006-2007 was disclosed through the Value of Blue Reports that were part of the Annual Settlement.  There has also been reference to the addition of access fees to hospital claims included in the Annual Renewals.  Specific discussions about the access fees occurred in 1994, prior to the implementation of retention reallocation as discussed in BCBSM's response to Discovery Request No.4 above.  At no time since its disclosure to Bay City in 1994, did the Plaintiff ask that the retention be ceased nor was an audit ever requested to verify the amount of access fees

CONFIDENTIAL

being charged and retained by BCBSM. The Plaintiff's silence induced BCBSM to believe that the City consented to the fees; BCBSM justifiably continued to charge the fees based upon BCBSM's understanding that the City consented to the fees, and; now, if allowed, the City's failure to raise the claim since at least 1994 may result in a significant and potential liability to BCBSM if BCBSM is compelled to return the ASC access fees. By Plaintiff's payment of the fees without objection, BCBSM was induced into meeting its obligation to pay the OTG subsidy, fund its reserves and support and maintain its provider networks by collection of the access fees from the Plaintiff and other self funded customers through its contractual arrangements. Former VP Chief Actuary, John Dunn, will testify about BCBSM's reliance on the payment of ASC access fees.

9.     State all facts which support your Affirmative Defense No. 12 that Plaintiff's damages were caused by persons or entities over which BCBSM has no control or right of control and specifically identify those third parties by name and address. Produce any documents which support this affirmative defense and state the names and current addresses of all witnesses who have personal knowledge regarding this affirmative defense.

**ANSWER:**  To the extent, if any, that the City utilized the services of professional benefit consultants who BCBSM believes had knowledge of the access fees and who received many presentations from BCBSM regarding

CONFIDENTIAL

renewals and annual settlements as well as general discussions about access fees.  To the extent that these consultants failed to properly advise the City about the BCBSM disclosures and the City's financial responsibilities under its contract with BCBSM, BCBSM cannot be held liable or responsible.  John Anthony will testify about any inquiry from Bay City about access fees and about the presentation of the Value of Blue reports to Bay City or its agent.  To the extent that Angela Garner of P.E.B.S. was involved in receiving reports from BCBSM and communicating BCBSM information to Bay City, she may testify about documentation from and communications with BCBSM on access fees for Bay City.

10.   State the names of all persons who can testify as to the statements contained in Affirmative Defense No. 13.

**ANSWER:**   **Francine   Hogan,   Sarina   Fulgiam-Thomas   and   Gloria Vanderheyden.**

11.   Do you admit that, prior to the 2007 annual settlement, no document provided to Plaintiff by Defendant states the amount of the ASC Access Fee, OTG, contingency, or Provider Network Fee or a method by which they can be calculated?

REDACTED

12.   If your response to the above request is anything but an

CONFIDENTIAL

unequivocal "yes," please:

      A.    State the specific facts that support your answer;

      B.    Identify by name, current address and title all persons with knowledge of the facts that you claim support your answer; and

      C.    Produce all documents that support your answer.

**ANSWER: The Master Contract and the Schedule A's put the Plaintiff on notice of the fact that BCBSM would be adding these charges to its hospital claim costs,  The audit provisions in the Master Contract would have enabled Plaintiff to determine the amount of access fees paid at any time.   In addition, when Nancy Mueller-Greve met with Bay City in 1994, she explained that BCBSM would be reducing the monthly administrative fee and adding certain charges to the City's hospital claims in order to off set the administrative costs associated with BCBSM provider networks and other administrative costs like contingency and subsidies.  Francine Hogan, Sarina Fulgiam-Thomas or Gloria Vanderheyden will testify that through the performance of an audit, and comparisons with claim reports provided to Bay City, the City could have calculated its liability for ASC access fees.  The 2006-2007 Settlement, presented in 2007, also included a disclosure of the access fees paid by the City.**

REDACTED

**CONFIDENTIAL**

REDACTED

14.     State the name and address of each expert witness you expect to testify at trial regarding the claims and affirmative defenses in this case. For each such expert witness, please state:

    A.     The subject matter about which the expert is expected to testify;

    B.     The substance of the facts and opinions to which the expert is expected to testify;

    C.     A summary of the grounds for each opinion; and

    D.     A summary of each expert's education, experience and training.

**ANSWER:** **BCBSM has named John W. Bauerlein of Milliman, 945 E. Paces Ferry Road, NE Suite 2500, Atlanta, GA 30326-1362 as its expert. In general, he will testify about the value of BCBSM administrative services and provider discounts in light of BCBSM's fixed administrative costs and ASC access fees compared with other commercial heath care insurers in Michigan.**

CONFIDENTIAL

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF BAY

**CITY OF BAY CITY,**

                    Plaintiff,

v.

**BLUE CROSS BLUE SHIELD OF
MICHIGAN**, a Michigan non-profit
Health care corporation,

                    Defendant.

Case No. 09-3427-CL
Hon. Kenneth W. Schmidt

---

| | |
|---|---|
| **WILLIAM H. HORTON (P31567)**<br>**ELIZABETH A. FAVARO (P69610)**<br>**Attorneys for Plaintiff**<br>Tenth Floor Columbia Center<br>101 West Big Beaver Road<br>Troy, Mi 48084-5280<br>248-457-7000 | **LEO A. NOUHAN (P30763)**<br>**Attorney for Defendant BCBSM**<br>600 E. Lafayette, Suite 1925<br>Detroit, MI  48226<br>313-983-2554 |

---

**PROOF OF SERVICE**

---

The undersigned certifies that on Monday, March 29, 2010 a copy of

Defendant's Response to Plaintiff's Second Discovery Requests was served by

first class mail and e-mail upon:

WILLIAM H. HORTON
ELIZABETH A. FAVARO
Tenth Floor Columbia Center
101 West Big Beaver Road
Troy, MI 48084-5280

_____

Dana Bonaudo

**CONFIDENTIAL**