UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| BORROUGHS CORPORATION and<br>BORROUGHS CORPORATION<br>EMPLOYEE BENEFIT PLAN,<br><br>    Plaintiffs,<br><br>v.<br><br>BLUE CROSS AND BLUE SHIELD OF<br>MICHIGAN,<br><br>    Defendant. | Case No. 2:11-cv-12565-VAR-PJK<br><br>Honorable Victoria A. Roberts<br>Magistrate Judge Paul J. Komives |
| HI-LEX CONTROLS INCORPORATED,<br>HI-LEX AMERICA, INCORPORATED<br>and<br>HI-LEX CORPORATION HEALTH AND<br>WELFARE PLAN,<br><br>    Plaintiffs,<br><br>v.<br><br>BLUE CROSS AND BLUE SHIELD OF<br>MICHIGAN,<br><br>    Defendant. | Case No: 2:11-cv-12557-VAR-PJK<br><br>Honorable Victoria A. Roberts<br>Magistrate Judge Paul J. Komives |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S OBJECTIONS
TO MAGISTRATE JUDGE'S APRIL 12, 2012 ORDER**

VARNUM LLP
*Counsel for Plaintiffs*
    Perrin Rynders (P38221)
    Aaron M. Phelps (P64790)
    Stephen F. MacGuidwin (P72302)
Business Address, Telephone, and E-Mail:
    P.O. Box 352
    Grand Rapids, MI 49501-0352
    (616) 336-6000
    prynders@varnumlaw.com
    amphelps@varnumlaw.com
    sfmacguidwin@varnumlaw.com

## **TABLE OF CONTENTS**

Page No.

TABLE OF CONTENTS ..................................................................................................i

TABLE OF AUTHORITIES .............................................................................................ii

CONCISE STATEMENT OF ISSUES PRESENTED.................................................... 1

CONTROLLING AUTHORITIES................................................................................... 1

I.   INTRODUCTION ................................................................................................ 2

II.  FACTS UNDERLYING DISPUTE ..................................................................... 3

III. LAW AND ARGUMENT .................................................................................... 5

    A.   The Requested Documents are Highly Relevant to Many Issues in the Case, and Magistrate Judge Komives Did Not Clearly Error by so Holding....................................................................... 6

        1.   The Requested Documents are Highly Relevant to BCBSM's Statute of Limitations Defense .............................................. 6

        2.   The Requested Documents Are Highly Relevant to Whether the Access Fees Were Disclosed At All...................................... 8

        3.   The Requested Documents Are Highly Relevant to a Variety of Other Issues in the Case......................................................... 8

    B.   The Magistrate Judge Did Not Clearly Err by Incorporating a Letter That was Part of an On-The-Record Stipulation in His Order .................. 9

    C.   BCBSM's Production of Its Own E-Mail Can Hardly be Characterized as an Undue Burden ................................................. 12

IV. CONCLUSION................................................................................................... 14

# **TABLE OF AUTHORITIES**

Page No.

**Cases**

*Anderson v. City of Bessemer City*
   470 U.S. 564 (1985) ........................................................................................................... 5

*Coleman v. Am. Red Cross*
   23 F.3d 1091 (6th Cir. 1994) ............................................................................................. 1

*Hennigan v. Gen. Elec. Co.*
   No. 09-11912, 2010 WL 4179376 (E.D. Mich. Oct. 20, 2010) (Roberts, J.) ..................... 6

*Lewis v. ACB Bus. Servs., Inc.*
   135 F.3d 389, 402 (6th Cir. 1998) ..................................................................................... 1

*Massey v. City of Ferndale*
   7 F.3d 506, 509 (6th Cir. 1993) ......................................................................................... 5

*United States v. Curtis*
   237 F.3d 598, 603 (6th Cir. 2001) ..................................................................................... 5

*United States v. U.S. Gypsum Co.*
   333 U.S. 364, 395 (1948) ............................................................................................. 5, 6

**Statutes**

§ 636(b)(1)(A) ........................................................................................................................... 5
28 U.S.C. § 636(b)(1)(A) .......................................................................................................... 5
29 U.S.C. § 1113 ....................................................................................................................... 7

**Rules**

Fed. R. Civ. P. 26(b)(1) ............................................................................................................. 1

## CONCISE STATEMENT OF ISSUES PRESENTED

Whether Magistrate Judge Komives committed clear error by compelling Defendant to Produce its own e-mail and related documents relating to access fees.

## CONTROLLING AUTHORITIES

For granting Plaintiffs' motion to compel production of documents. Fed. R. Civ. P. 26(b)(1); *Coleman v. Am. Red Cross*, 23 F.3d 1091 (6th Cir. 1994); *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998).

## I.  INTRODUCTION

At every turn, Blue Cross and Blue Shield of Michigan ("BCBSM") has objected to, avoided or otherwise delayed discovery in this case.  In fact, of the 98 document requests served by Plaintiffs, BCBSM has specifically objected to 95 of them.  Unbelievably, BCBSM has even objected to producing its own internal (and other) communications – principally e-mail.  Magistrate Judge Komives correctly ordered BCBSM to produce these communications, but instead of doing so, BCBSM now objects (again). [1]

Plaintiffs' request is simple – they seek production of communications concerning the hidden access fee scheme that is the subject of this case.  Those communications would include BCBSM's internal discussions about why BCBSM decided to charge Plaintiffs the hidden fees in the first instance and its plan to keep the fees hidden from its customers.  Frankly, it is hard to imagine discovery more relevant than this.  Indeed, the Court should take note that although BCBSM has been charging hidden access fees continuously since 1994, and has archived every single e-mail in its system since 2004, it has produced <u>zero</u> internal e-mails discussing the key aspects of the access fee scheme.

Perhaps as troubling as BCBSM's refusal to provide the requested documents is the manner in which it has delayed decision of this dispute.  There have actually been two separate hearings on Plaintiffs' motion for production of these documents.  At the first hearing, BCBSM <u>stipulated</u> to a compromise solution in which Plaintiffs' counsel would provide a more detailed and focused list of the communications sought, and BCBSM would work with Plaintiffs' counsel

---

[1] BCBSM has also flatly refused to produce a corporate representative for deposition pursuant to Fed. R. Civ. P. 30(b)(6), arguing instead that it should be excused from this obligation and that Plaintiffs should be limited to taking depositions of witnesses who might, or might not, be knowledgeable about relevant topics.  This dispute is yet another discovery dispute pending before the Court.

on a plan to produce the requested information. After making this stipulation on the record (and thereby avoiding decision on the motion to compel), BCBSM never responded to Plaintiffs' attempts to fulfill the stipulation, forcing Plaintiffs to re-notice the hearing. The Court, clearly frustrated with BCBSM's excuses for not providing discovery and its outright refusal to cooperate in any good faith manner, concluded the requested documents were <u>relevant</u> and <u>not unduly burdensome</u> to produce, and ordered BCBSM to produce them.

BCBSM's current objection is designed to do nothing more than delay the inevitable and must be overruled.[2]

## II.    FACTS UNDERLYING DISPUTE

As the Court may recall, BCBSM is a third-party administrator for Plaintiffs' self-insured health benefit plan. In its fiduciary capacity, BCBSM was entrusted with money to pay the healthcare claims of Plaintiffs' plan participants. Unbeknownst to Plaintiffs, BCBSM was inflating hospital claims and keeping the over-stated portion of those claims for itself as additional compensation. This money was in addition to the disclosed administrative fees that BCBSM's customers agreed to pay. In other words, BCBSM was paid twice to administer Plaintiffs' self-insured programs – once in a disclosed fee that the customers agreed to pay and once in an undisclosed fee arbitrarily set by BCBSM that the customers did not agree to pay.

Throughout its brief, BCBSM argues the merits of the case, as if to suggest that the Court should deny discovery because BCBSM believes it will prevail on the merits. Not only does BCBSM have the Rules of Civil Procedure backwards, but its insistence that it will prevail

---

[2] It is unclear whether BCBSM will even produce the e-mails if ordered to do so. The Court previously ordered BCBSM to produce its interrogatory answers from prior cases involving access fees by April 9, 2012. Despite the fact that the Order was never stayed, and that BCBSM's objections to the Order were overruled by this Court, it has still not complied with the Court's Order, further delaying Plaintiffs' pursuit of discovery.

3

stands in stark contrast to the rulings of <u>every</u> court throughout the state that has analyzed this issue.  While BCBSM argues that the Administrative Services Contract and Annual Schedule A's both "expressly authorize Blue Cross to charge access fees," every court that has analyzed that issue has ruled just the opposite.  To date, BCBSM has lost every access fee case that has gone to verdict (at least five) and all others have either been settled or remain pending.  In other words, in the nearly 30 cases filed against BCBSM – all of which deal with the exact same contracts and allegations – BCBSM has failed to persuade any court that its positions were meritorious.

Indeed, the evidence against BCBSM is overwhelming.  In particular (and in contrast to BCBSM's statement that there was no scheme to trick its customers into paying the access fee), <u>BCBSM's own internal memorandum</u> clearly states that the access fees would "be inherent in the system and <u>no longer visible to the customer</u>."  (Emphasis added).  In fact, BCBSM's former vice president and chief actuary, Paul Austin, has testified that the access fees were intentionally removed as an itemized part of the customers' bill and included in hospital claims costs for the express purpose of getting customers to pay the fees without realizing they were paying them.

Worse yet, BCBSM affirmatively misrepresented its compensation to Plaintiffs.  This was accomplished by sending Plaintiffs false Annual Settlement Statements that mischaracterized tens (sometimes hundreds) of thousands of access fees as "actual claims paid" by BCBSM.  Likewise, BCBSM purported to report all administrative fees and other compensation it received from Plaintiffs, but the numbers provided by BCBSM did not include the access fees, resulting in Plaintiffs believing that they were paying BCBSM less than they really were.  On top of that, Plaintiff Hi-Lex expressly asked BCBSM if there were any access

fees charged, and BCBSM responded, in writing, that such fees were "not applicable" to Hi-Lex (while at the very same time, BCBSM was charging Hi-Lex access fees).

Further, BCBSM's claim that it verbally disclosed the access fees flies in the face of reality. The entire reason the access fees were buried in claims cost was to make them "invisible to the customer." BCBSM would have the Court believe that it fully disclosed the fees that it had just gone to such great lengths to conceal. Indeed, witnesses will hotly dispute BCBSM's self-serving claims of "full disclosure." The former Hi-Lex CFO, for example, who BCBSM alleges was told about the access fees, flatly denies it. The bottom line is that BCBSM's version of history is belied by its own stated intent to keep the access fees secret, the access fee design itself (which by definition calls for the access fees to be buried in claims costs), the deliberate misrepresentation of claims cost and compensation received by BCBSM, and the holdings of every court that has analyzed these issues.

### III.  LAW AND ARGUMENT

"When a magistrate judge determines a non-excepted, pending pretrial matter, the district court has the authority to 'reconsider' the determination, but under a limited standard of review." *Massey v. City of Ferndale*, 7 F.3d 506, 509 (6th Cir. 1993) (citing 28 U.S.C. § 636(b)(1)(A)). "A district court shall apply a 'clearly erroneous or contrary to law' standard of review for the 'nondispositive' preliminary measures of § 636(b)(1)(A)." *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001).

"[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). "This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it

would have decided the case differently." *Id.* "If two permissible views of the evidence exist, a magistrate judge's decision cannot be 'clearly erroneous.'" *Hennigan v. Gen. Elec. Co.*, No. 09-11912, 2010 WL 4179376 (E.D. Mich. Oct. 20, 2010) (Roberts, J.) (**Exhibit 1**).

### A.  THE REQUESTED DOCUMENTS ARE HIGHLY RELEVANT TO MANY ISSUES IN THE CASE, AND MAGISTRATE JUDGE KOMIVES DID NOT CLEARLY ERR BY SO HOLDING

BCBSM's lead relevance argument is that "Blue Cross's internal intent, if such a thing can even be said to exist, is completely irrelevant and therefore inscrutable." [Dkt. No. 67 at 6].[3] Magistrate Judge Komives disagreed and his Order is not clearly erroneous for at least three separate reasons: (1) BCBSM's intent is clearly an issue under both Plaintiffs' federal and state law claims; (2) even if BCBSM's intent was not an issue, the requested communications go to the larger issue of disclosure, which BCBSM concedes is relevant; and (3) the requested communications relate to a variety of issues such as the access fee methodology, calculation of damages, and training of account managers, all of which are relevant regardless of intent or disclosure.

#### 1.  The Requested Documents are Highly Relevant to BCBSM's Statute of Limitations Defense

Apparently recognizing its weaknesses on liability, BCBSM has vigorously contested the statute of limitations, repeatedly arguing that Plaintiffs' claims are time barred. Throughout each of its briefs, BCBSM represents to the Court that the three-year limitations period under ERISA applies, while at the same time ignoring the "fraud or concealment" exception in that very same statute:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of –

---

[3] The Docket numbers cited in this Brief correspond to filings in the Hi-Lex matter.

6

> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2) three years after the earliest date of which the plaintiff had actual knowledge of the breach or violation;
>
> <u>except that in the case of fraud or concealment</u>, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113 (emphasis added).  The last paragraph of the statute cannot be ignored, and it clearly makes BCBSM's acts of concealment an issue.

Incredibly, at the very same time BCBSM argues that its intent is not relevant, its own brief states "<u>Plaintiffs</u> <u>must</u> <u>show</u> that Blue Cross <u>intentionally</u> <u>hid</u> information required to base a claim regarding alleged non-disclosure of Access Fees," and "Plaintiffs will have to show that Blue Cross 'engaged in some trick or contrivance intended to exclude suspicion or prevent injury.'"  *See* Defendant's Brief [Dkt. No. 67 at 7] (emphasis added).  Plaintiffs are simply at a loss to understand how BCBSM can say that Plaintiffs must prove BCBSM's intent, while simultaneously arguing that intent is "irrelevant" and "inscrutable."

Plaintiffs expect the discovery they seek will <u>further</u> prove that BCBSM intentionally hid access fees.[4]  After all, there must have been some internal discussion among BCBSM employees as to why they were falsely reporting access fees and dishonestly responding to Requests for Proposals.  Indeed, given BCBSM's success at concealing the access fees, it seems highly likely that there were internal BCBSM directives <u>not</u> to disclose those fees.

---

[4] There is already substantial evidence of intentional concealment, including dozens of falsified settlement statements.  BCBSM also submitted false Form 5500 information (used for federal reporting purposes) which included direct misrepresentations about the amount of compensation it was receiving from Plaintiffs.  On top of that, witnesses will testify that when they asked about access fees, BCBSM expressly denied there were any such fees.

7

BCBSM's intent is also relevant to Plaintiffs' state law cause of action for fraud. Plaintiffs have asserted a common law fraud count against BCBSM. *See* Plaintiff Borroughs' Complaint at Count VIII for Fraud/Misrepresentation (alleging "BCBSM made the representations with the intention of inducing Borroughs' reliance and, in fact, Borroughs did reasonably rely upon the representations made by BCBSM").  The Court, while dismissing this Count without prejudice, expressly allowed Plaintiffs to conduct discovery on it. *See* Dkt. No. 22 ("However, discovery can be conducted on these claims" and "Plaintiffs may be able to reinstate them.")

There is simply no reasonable dispute that the requested documents are relevant, and Magistrate Judge Komives' ruling so holding is not clearly erroneous.

### 2. The Requested Documents Are Highly Relevant to Whether the Access Fees Were Disclosed At All

Throughout its Objection, and elsewhere in this case, BCBSM has argued that one of the key issues is whether the access fees were disclosed.  Plaintiffs contend they were not disclosed, and the requested discovery is designed to prove just that.  No doubt, there have been numerous internal communications concerning BCBSM's access fee practice and its direction to its employees not to disclose these fees.  Obviously, an admission by BCBSM employees that access fees had not been, and should not be, disclosed completely undercuts the position taken by BCBSM in these (and other) cases that such fees were disclosed.

### 3. The Requested Documents Are Highly Relevant to a Variety of Other Issues in the Case

BCBSM's objections completely ignore that the requested communications are also relevant to a variety of other issues.  For example, the requested communications will likely include internal BCBSM discussion about the negotiation and execution of the contracts between the parties, the terms of which are disputed.  Plaintiffs also requested communications relating to

8

access fee factors and calculations. As the Court is now aware, neither the access fees themselves, nor the calculation of those fees, was disclosed to Plaintiffs (until more recently). In an attempt to unravel this mystery, Plaintiffs requested communications that related to the development of the access fee factors, the methodology for calculating access fees, and changes in the access fee factors over time. Those communications are relevant to, among other things, damages.

Simply put, this case is about access fees, and communications about access fees are discoverable.

**B.    THE MAGISTRATE JUDGE DID NOT CLEARLY ERR BY INCORPORATING A LETTER THAT WAS PART OF AN ON-THE-RECORD STIPULATION IN HIS ORDER**

BCBSM makes much of the fact that Magistrate Judge Komives referenced the March 16, 2012 letter of Plaintiffs' counsel in his Order. What BCBSM omitted, however, is that the letter was actually part of an on-the-record stipulation the month before. Prior to the hearing on Plaintiffs' motion to compel (March 9, 2012), Judge Komives requested that the parties meet and confer in an attempt to resolve their differences. The parties proceeded to do so for nearly three hours, during which BCBSM's counsel complained that the discovery requests were "too broad." In yet another attempt to accommodate BCBSM,[5] Plaintiffs' counsel agreed that they would provide more detailed identification of the specific types of communications sought and BCBSM's counsel agreed to review the letter and work in good faith to resolve any remaining differences. This agreement was then placed on the record:

> MR. PHELPS: In the next few days, plaintiffs are going to provide defendant with a detailed list of exactly the types of emails, more specificity, with the types of emails that we wish them to go obtain and produce.

---

[5] Prior to the motion hearing, Plaintiffs offered to have BCBSM conduct a focused e-mail search for the requested communications (similar to what Plaintiffs did of their e-mail at the request of BCBSM). BCBSM refused to even discuss this compromise.

>     And counsel for Blue-Cross is going take a look at that list and let us know if they have any objections to those issues.
>
>     We agreed that within two weeks of today, we will notify the Court whether we've resolved that issue or whether we need to schedule a further hearing.
>
>     \*   \*   \*
>
>     THE COURT: Okay. Is that also part of the agreement that's been reached?
>
>     MR. BERNARD: It is, Your Honor.

Pursuant to the stipulation, Plaintiffs' counsel sent the contemplated letter to BCBSM's counsel on March 16, 2012. Despite BCBSM's counsel's on-the-record agreement, he never responded to the letter. Once it became clear that BCBSM's stipulation would not be honored and was nothing more than another delay tactic, Plaintiffs sought and obtained re-notice of the hearing for April 11, 2012. During that hearing, Plaintiffs' counsel informed the Court that BCBSM had not honored the prior stipulation. The Court, after having concluded that the requested materials were relevant, ordered BCBSM to comply with the letter to which it had previously stipulated that it would respond.[6] To the extent BCBSM is dissatisfied with the outcome, it has only itself to blame. It cannot avoid a hearing on an issue based on a stipulation and then renege on that stipulation without any consequences whatsoever.

---

[6] BCBSM suggests some improper conduct on the part of Plaintiffs' counsel in providing the March 16 letter to the clerk following the hearing, describing it as "*ex parte*." In fact, it was Magistrate Judge Komives who directed Plaintiffs' counsel to provide the letter to the clerk following the hearing, which Plaintiffs' counsel did. Further, there was nothing "*ex parte*" as the letter was provided to the clerk in the presence of BCBSM's counsel (that is how they know it was provided). BCBSM also asserts that it was deprived the opportunity to address the letter's content on the merits. BCBSM is confused. It was provided the letter on March 16, weeks before the hearing. It had every opportunity to respond to the letter – before and during the hearing.

Moreover, BCBSM's complaints about the letter are "much ado about nothing." The letter was drafted <u>at the request of</u> BCBSM's counsel in the first instance, and all it did was provide more specificity to the formal document requests:

> 15. Identify all documents and communications that relate to BCBSM charging Access Fees.
>
> * * *
>
> 1. Produce all documents you were asked to identify in connection with any of the preceding interrogatories.
>
> * * *
>
> 8. Produce all documents concerning BCBSM's decision to charge Access Fees beginning in 1994.
>
> 9. Produce all documents relating to internal training, instructions, or directives about Access Fees.
>
> 10. Produce all documents relating to internal BCBSM communications about Access Fees.
>
> 11. Produce all documents relating to communications about Access Fees.
>
> 12. Produce all documents not already requested concerning your practice of charging Access Fees.

*See* Plaintiffs' First Request for Admissions, Interrogatories and Document Requests ("Plaintiffs' Discovery Requests"), Interrogatory 15 and Doc. Request Nos. 1, 8-12 attached as **Exhibit 2**.

Frankly, if BCBSM would rather the order compel production of all documents responsive to the foregoing requests, that would suit Plaintiffs as the March 16 letter is simply a more specific itemization of the broader discovery requests.[7]

---

[7] BCBSM also complains that Magistrate Judge Komives was not aware of the letter until midway through the hearing. Plaintiffs fail to see what difference that makes as the Judge was clearly aware of it <u>during</u> the hearing and <u>before</u> issuing his written ruling. The implication of BCBSM's argument (that the Magistrate Judge was somehow mistaken because he had not had an opportunity to read the letter) is simply not true. In fact, the clerk told counsel for both

11

C. **BCBSM'S PRODUCTION OF ITS OWN INTERNAL E-MAIL CAN HARDLY BE CHARACTERIZED AS AN UNDUE BURDEN**

BCBSM's final argument is that production of its own e-mail is too burdensome. For its argument on this issue, BCBSM incorporates its prior brief where it spent most of the time detailing how big it is, under the apparent assumption that large companies need not do certain discovery. BCBSM says it has over 7,000 employees, as if to suggest that Plaintiffs expected BCBSM to search the e-mail of every person who ever worked at BCBSM. In fact, it was Plaintiffs who proposed to segregate the e-mails of the key people involved with the access fee scheme (approximately 21) and individuals identified on witness lists or initial disclosures. The archived e-mail of these 30 or so individuals could then be searched using the very same search terms that BCBSM demanded that Plaintiffs use. This straight forward and customary process for doing e-discovery was summarily rejected by BCBSM.

BCBSM's representation that performing e-mail searches is too burdensome is also curious given that BCBSM searched its entire e-mail archive (apparently 7,000 users) for e-mails containing "Hi-Lex" or "Borroughs," when it was looking for e-mail to support its defense. It is only when BCBSM is asked to produce documents that are likely detrimental to its case that the burden of production becomes too much for it to bear.

BCBSM's "unduly burdensome" argument also assumes that there is some relationship between the quantity of e-mail and the burden of producing it, when in reality there is none. The only "burden" on BCBSM is to have one of its information technology staff perform the electronic searches. Whether those searches yield 10,000 or 50,000 e-mails creates no additional burden with respect to compliance with the discovery requests or Court Order. Once the e-mails are identified, they need only be electronically copied and produced.

---

parties that she would take both letters (February 10 and March 16) to the Judge for review.

BCBSM claims it must also review each individual e-mail caught within the search for privilege. While BCBSM is free to do a privilege review, that is a burden it has <u>chosen</u> to bear. BCBSM need not conduct any privilege review to comply with the discovery requests. Alternatively, it could do an electronic search using the names of its attorneys, to quickly pull documents likely to be privileged. If BCBSM wishes to manually review each and every document captured by the searches, it is certainly free to do so, but that is a burden created by its own litigation strategy, not the document requests themselves.

Finally, BCBSM asks the Court to weigh the slight burden of production against the "ample evidence of disclosure." As explained in Section II above, the evidence shows that BCBSM <u>did not disclose</u> the access fees, and in fact, affirmatively misrepresented that it was not charging access fees. Indeed, the so-called disclosures identified by BCBSM really prove there was no disclosure at all. For example, its Exhibit E, an internal Blue Cross e-mail discussing an inquiry from a consultant (Dave Mamucia) regarding access fees reveals the lengths to which BCBSM personnel went to <u>avoid answering questions</u> regarding access fees:

> Dave Mamucia <u>wants disclosure</u>, or a more detailed explanation regarding line 11 of the Schedule A. That is "Your hospital claims" cost reflects certain charges for provider network access, contingency, and other subsidies as appropriate."
>
> <u>You had warned us that this question was coming</u>. We did tell the account that there is retention reallocation that reduces the net hospital discount. <u>We do not want to respond with an inappropriate answer and would like support from your area as to what, exactly we can say</u>. We realize that Marsh is going to share our answer with all their consultants and <u>we want to give a well measured response</u>. Please provide us with underwriting's suggestion to this question.

This e-mail says it all. BCBSM was worried about questions regarding access fees which could only be a concern if clients did not actually understand the access fees to begin with. Then when BCBSM was asked about the vague language, instead of giving an honest, candid answer, BCBSM personnel asked for coaching for a "well measured response." Incredibly, BCBSM

13

management responded by telling its staff to simply quote the same vague, ambiguous and uninformative language from the contract that the customers did not understand in the first place. BCBSM's reliance on this e-mail is even more perplexing because there is no record that it ever responded to the inquiry with any meaningful "disclosure" at all!

Suffice it to say, the so-called evidence BCBSM has proffered will not save it from liability and certainly does not relieve it from its discovery obligations.

### IV.   CONCLUSION

BCBSM's discovery tactics have proven extraordinarily expensive and prejudicial to Plaintiffs.  With just six weeks left to complete discovery, Plaintiffs still do not have the key e-mails and other documents requested over seven months ago.  This must stop now.  Magistrate Judge Komives' Order should be affirmed and costs and attorneys' fees awarded to Plaintiffs.

|  |  |
|---|---|
|  | VARNUM LLP  *Counsel for Plaintiffs* |
| Dated:  May 4, 2012 | By:   /s/Aaron M. Phelps  Perrin Rynders (P38221)  Aaron M. Phelps (P64790)  Stephen F. MacGuidwin (P72302)  Business Address, Telephone, and E-Mail:  P.O. Box 352  Grand Rapids, MI  49501-0352  (616) 336-6000  prynders@varnumlaw.com  amphelps@varnumlaw.com  sfmacguidwin@varnumlaw.com |

14

## CERTIFICATE OF SERVICE

  I hereby certify that on May 4, 2012, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to counsel of record.

             By: /s/Aaron M. Phelps
                Perrin Rynders (P38221)
                Aaron M. Phelps (P64790)
                Stephen F. MacGuidwin (P72302)
          Business Address, Telephone, and E-Mail:
                P.O. Box 352
                Grand Rapids, MI  49501-0352
                (616) 336-6000
                prynders@varnumlaw.com
                amphelps@varnumlaw.com
                sfmacguidwin@varnumlaw.com

5165435_1.DOCX