# EXHIBIT 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| BORROUGHS CORPORATION and BORROUGHS CORPORATION EMPLOYEE BENEFIT PLAN,<br><br>      Plaintiffs,<br><br>v.<br><br>BLUE CROSS AND BLUE SHIELD OF MICHIGAN,<br><br>      Defendant. | Case No. 2:11-cv-12565-VAR-PJK<br><br>Honorable Victoria A. Roberts<br>Magistrate Judge  Paul J. Komives |

| | |
|---|---|
| VARNUM LLP<br>Perrin Rynders (P38221)<br>Aaron M. Phelps (P64790)<br>Attorneys for Plaintiffs<br>Bridgewater Place, P.O. Box 352<br>Grand Rapids, MI  49501-0352<br>616/336-6000 | BODMAN PLC<br>Alan N. Harris (P56324)<br>G. Christopher Bernard (P57939)<br>Attorneys for Defendant<br>201 S. Division St., Suite 400<br>Ann Arbor, MI  48104<br>734/761-3780 |

## PLAINTIFFS' FIRST REQUEST FOR ADMISSIONS, FIRST SET OF INTERROGATORIES, AND FIRST SET OF DOCUMENT PRODUCTION REQUESTS

Plaintiffs submit the following discovery requests under Fed. R. Civ. P. 25, 33, 34, and 36 to Defendant Blue Cross and Blue Shield of Michigan ("BCBSM").  Defendant is required to answer and supplement these discovery requests in full compliance with those rules.

## GENERAL DEFINITIONS

Except as specifically noted in a particular discovery request, the following definitions shall apply to each of the following terms throughout these discovery requests:

1.    "Document" or "documents" means anything covered by Fed. R. Civ. P. 34(a).

2. "Defendant," "BCBSM," "you," and "your" means or refers to Blue Cross and Blue Shield of Michigan; its employees, agents, attorneys, representatives, subsidiaries, and accountants; and every person or entity that possesses information or documents on behalf of Blue Cross and Blue Shield of Michigan.

3. "Communication" or "communications" means any spoken or written transfer of information or documents from one or more persons to one or more other persons.

4. "Identity" or "identify," when used with reference to a natural person, means to state with respect to such person:

    a. His or her name.
    b. His or her present residence address and telephone number.
    c. The identity of the person or entity by whom he or she is employed, or with whom he or she is affiliated.
    d. His or her title, duty, or position at his or her place or place of employment/affiliation.
    e. His or her past and present relationships to Defendant.

Once a person has been identified, it is sufficient thereafter when identifying that person merely to state his/her/its name.

5. "Identity" or "identify," when used with respect to a document, means to assign a unique alpha-numeric designation to such document and to state:

    a. The type of document (letter, memorandum, etc.).
    b. The identity of the author/addressor of the document.
    c. The identity of the addressee of the document.
    d. The identity of all recipients of indicated or blind copies.
    e. Its date.
    f. Its subject matter.
    g. The total number of pages.
    h. The identity of all attachments or appendices.
    i. The identity of all persons to whom it or its contents were distributed, shown, or explained.
    j. The identity of the present custodian.
    k. The identity of each natural person whose testimony could be used to authenticate the document.

All subsequent references to a document once identified may be made by stating the document identification number assigned by you pursuant to the above instruction.

6. "Identity" or "identify," when used with reference to a communication, means to:

    a.     Identify the person or persons making or originating the communication.
    b.     Identify the person or persons to whom or in whose presence the communication was made.
    c.     State when and where the communication was made.
    d.     Identify all documents that embody, relate to, or refer to the communication.
    e.     State the substance of the communication.

For each communication for which a claim of privilege or work-product is made, respond to subparts a through e above; state the subject matter of the communication; identify all persons to whom some or all of the contents of the communication were communicated; and state the nature of the privilege or work-product claim asserted.

7. "Identity" or "identify," when used with respect to a fact or reason, means to state for each such fact or reason:

    a.     All events, conditions, data observations, or states of affairs that support or relate to the fact or reason.
    b.     All subsidiary facts, data, or observations from which or by which the fact or reason is observed, inferred, or detected.
    c.     The logical reasoning by which the fact or reason is inferred from subsidiary events, conditions, observations, data, or states of affairs.
    d.     All corroborating facts, reasons, or data.

8. The term "specify" as used herein shall mean:

    a.     To describe fully and in detail by reference to underlying facts rather than by reference to ultimate facts or conclusions of fact or laws.
    b.     Where applicable, to particularize as to (i) time, (ii) place, and (iii) manner.
    c.     To set forth all relevant facts necessary to the complete understanding of the act, process, event, or thing in question.

9. The words "any," "each," "all," and "every," include the singular and the plural, and they shall be deemed interchangeable.

10.    When an inquiry is made for information related to an occurrence "between" two dates, the inquiry seeks information for the period including the years or dates designated.

11.    As used herein, the singular includes the plural and the plural includes the singular. Similarly, words of one gender shall be deemed to include words of all genders.

12.    The term "Complaint" as used hereafter shall mean, unless otherwise specifically noted, the Complaint filed by Plaintiffs in the captioned matter.

## SPECIAL DEFINITIONS

1.    **"Access Fee(s)"** means the "administrative access fees added to hospital claims" that are in addition to the fixed monthly administrative fee, as described in BCBSM's April 29, 2011 letter, attached as Exhibit 5 to Plaintiffs' Complaint.

2.    **"Administrative Fee(s)"** means the "fixed monthly administrative fee" as described in BCBSM's April 29, 2011 letter, attached as Exhibit 5 to Plaintiffs' Complaint.

3.    **"Amount(s) Billed"** means the amount that BCBSM billed or invoiced during the applicable Contractual Period.

4.    **"Contract/Contract Document(s)"** includes any Administrative Services Contracts, any Schedule A documents, and any other documents that BCBSM contends are relevant to its contractual relationship with Borroughs for the applicable Contractual Period.

5.    **"Contractual Period(s)"** include the following:

    a.    May 1, 1991 – April 30, 1992
    b.    May 1, 1992 – April 30, 1993
    c.    May 1, 1993 – April 30, 1994
    d.    May 1, 1994 – April 30, 1995
    e.    May 1, 1995 – April 30, 1996
    f.    May 1, 1996 – April 30, 1997
    g.    May 1, 1997 – April 30, 1998
    h.    May 1, 1998 – April 30, 1999
    i.    May 1, 1999 – April 30, 2000
    j.    May 1, 2000 – April 30, 2001
    k.    May 1, 2001 – April 30, 2002
    l.    May 1, 2002 – April 30, 2003
    m.    May 1, 2003 – December 31, 2003
    n.    January 1, 2004 – December 31, 2004
    o.    January 1, 2005 – December 31, 2005
    p.    January 1, 2006 – December 31, 2006

q.  January 1, 2007 – December 31, 2007

r.  January 1, 2008 – December 31, 2008

6.  **"Borroughs"** means Borroughs Corporation.

7.  **"Plan"** means Borroughs Corporation Employee Benefit Plan.

8.  **"Plaintiffs"** means each of the named plaintiffs individually and collectively, and if the answer to any of the following discovery requests depends upon which specific of the named plaintiffs is referenced, BCBSM shall answer each request separately as to each named plaintiff.

9.  **"Settlement Document(s)"** means any and all written reports provided either on a quarterly, annual, or other periodic basis to Borroughs by BCBSM.

## REQUESTS TO ADMIT

1.  Admit, separately for each Contractual Period, that BCBSM and Borroughs entered into a contract for administrative services that covered the specific Contractual Period.

**RESPONSE:**

2.  Admit, separately for each Contractual Period, that BCBSM charged Borroughs Access Fees for the specific Contractual Period.

**RESPONSE:**

3.  Admit that BCBSM did not orally advise any representative or agent of the Plan or Borroughs, at any time, that it charged Borroughs Access Fees at any time between May 1, 1991 and December 31, 2008.

**RESPONSE:**

5



4.    Admit that BCBSM did not advise any representative or agent of the Plan or Borroughs in writing, at any time, that it charged Borroughs Access Fees at any time between May 1, 1991 and December 31, 2008.

**RESPONSE:**

5.    Admit, separately for each Contractual Period, that BCBSM did not orally advise any representative or agent of the Plan or Borroughs regarding the exact amount of Access Fees it charged Borroughs during the specific Contractual Period.

**RESPONSE:**

6.    Admit, separately for each Contractual Period, that BCBSM did not disclose to the Plan or Borroughs in writing the exact amount of Access Fees it charged Borroughs during the specific Contractual Period.

**RESPONSE:**

7.    Admit that BCBSM did not orally advise any representative or agent of the Plan or Borroughs, at any time, exactly how it determined or calculated the amount of the Access Fees it charged Borroughs.

**RESPONSE:**

8.    Admit that BCBSM did not disclose to the Plan or Borroughs in writing, at any time, exactly how it determined or calculated the amount of the Access Fees it charged Borroughs.

**RESPONSE:**

9.    Admit, separately for each Contractual Period, that no representative or agent of the Plan or Borroughs orally agreed, at any time, to pay BCBSM the Access Fees during the specific Contractual Period.

**RESPONSE:**

10.    Admit, separately for each Contractual Period, that no representative or agent of the Plan or Borroughs agreed in writing, at any time, to pay BCBSM the Access Fees during the specific Contractual Period.

**RESPONSE:**

11.    Admit, separately for each Contractual Period, that the dollar amount reported as hospital claims cost or claims paid in any Settlements provided by BCBSM to the Plan or Borroughs included Access Fees for the specific Contractual Period.

**RESPONSE:**

12.    Admit, separately for each Contractual Period, that the dollar amount reported as hospital claims cost or claims paid in any Form 5500 documents provided by BCBSM to the Plan or Borroughs included Access Fees for the specific Contractual Period.

**RESPONSE:**

13.    Admit that the document attached as Exhibit 1 to the Complaint is an authentic and complete copy of the original Administrative Services Contract signed by BCBSM and Borroughs effective January 1, 1994.

**RESPONSE:**

14.     Admit that the document attached as Exhibit 2 to the Complaint is an authentic and complete copy of the original Administrative Services Contract signed by BCBSM and Borroughs effective January 5, 2000.

**RESPONSE:**

15.     Admit that the documents attached as Exhibit 32 to the Complaint are authentic and complete copies of the Schedule A's for the 2004 through 2011 Contractual Periods.

**RESPONSE:**

16.     Admit that the document attached as Exhibit 4 to the Complaint is an authentic and complete copy of a BCBSM internal memorandum.

**RESPONSE:**

17.     Admit that the document attached as Exhibit 5 to the Complaint is an authentic and complete copy of a letter sent by Sophia C. Quinn, a BCBSM employee, to Joseph Ekstrom on or around April 29, 2011.

**RESPONSE:**

18.     Admit that the document attached as Exhibit 6 to the Complaint is an authentic copy an Administrative Fee Summary created by BCBSM and provided to Borroughs.

**RESPONSE:**

19.    Admit that the documents attached as Exhibit 7 to the Complaint are authentic copies of settlement statements that BCBSM provided to Borroughs.

**RESPONSE:**

20.    Admit that the documents attached at Exhibit 8 to the Complaint are authentic copies of quarterly settlement statements that BCBSM provided to Borroughs.

**RESPONSE:**

21.    Admit that the documents attached as Exhibit 9 to the Complaint are authentic copies of Form 5500 documents that BCBSM provided to Borroughs.

**RESPONSE:**

22.    Admit that the document attached as Exhibit 10 to the Complaint is an authentic and complete copy of a BCBSM training manual.

**RESPONSE:**

**INTERROGATORIES**

1.    If the answer to Request For Admission Number 1 is "Admitted" for any of the Contractual Periods, identify all documents that form part of the contract for each specific Contractual Periods.

**RESPONSE:**

2.      Specify, separately for each Contractual Period, every component of the Amounts Billed (including but not limited to Administrative Fees, Access Fees, other fees, stop loss coverage premiums, payments to hospitals and providers, cost transfers, contingencies, and subsidies).

**RESPONSE:**

3.      Specify, separately for each Contractual Period, the exact amount of Administrative Fees that BCBSM charged Borroughs.

**RESPONSE:**

4.      Specify, separately for each Contractual Period, the exact amount of Access Fees that BCBSM charged Borroughs.

**RESPONSE:**

5.      Specify, separately for each Contractual Period, the exact amount of stop loss coverage premiums that BCBSM charged Borroughs.

**RESPONSE:**

6.      Specify, separately for each Contractual Period, the exact amount of payments to hospitals and healthcare providers that BCBSM charged Borroughs.

**RESPONSE:**

7.     Specify, separately for each Contractual Period and for every component of the Amounts Billed, all other fees, charges, subsidies, cost transfers, or any other monies that BCBSM charged Borroughs.

**RESPONSE:**

8.     If any of your responses to Requests For Admission Numbers 3-8 are anything other than an unqualified "Admitted," identify all communications upon which you base your response(s).

**RESPONSE:**

9.     Identify, separately for each Contractual Period, all BCBSM representatives or agents who were ever involved in determining or calculating the amount of Access Fees charged to Borroughs.

**RESPONSE:**

10.     If any of your responses to Requests For Admission Numbers 9-10 is anything other than an unqualified "Admitted," identify all communications upon which you base your response(s).

**RESPONSE:**

11.    Specify for each Contractual Period, in both dollars and by percentage, what portion of the hospital claims cost or claims paid that was reported in quarterly and annual settlements was for Access Fees.

**RESPONSE:**

12.    Specify for each Contractual Period, in both dollars and by percentage, what portion of the hospital claims cost or claims paid that was reported in Form 5500 documents was for Access Fees.

**RESPONSE:**

13.    If you contend that you were allowed to charge Borroughs Access Fees, specify how the Access Fees were calculated and charged for each Contractual Period.

**RESPONSE:**

14.    Identify, separately for each Contractual Period, the specific language in every document that you rely upon in support of your contention that the "Parties' contract . . . explicitly indentif(ies) Access Fees, obligate(s) Borroughs to pay Access Fees, and explain(s) how Access Fees will be calculated and charged". *See* Defendant's Motion pursuant to Federal Rules 12(B)(6) & (F) to Dismiss State Law Claims and Strike Jury Demand, Pg 9.

**RESPONSE:**

15.    Identify all documents and communications that relate to BCBSM charging Access Fees.

**RESPONSE:**

16.    Identify all documents and communications that relate to BCBSM charging Access Fees.

**RESPONSE:**

17.    Identify all documents and communications that relate to BCBSM charging Access Fees.

**RESPONSE:**

18.    Identify all documents and communications that relate to BCBSM charging Access Fees.

**RESPONSE:**

19.    Regarding Exhibit 7 to the Complaint, page 53 of 62, there is a heading "Actual Claims Paid by BCBSM" with amounts listed for "Facility" ($1,033,208) and "Professional" ($471,823). Was any portion of any of those two amounts retained by you, and if so how much with respect to each amount?

**RESPONSE:**

20.    With respect to actual claims paid on behalf of the Plan or Borroughs to healthcare providers other than Peer 1-4 hospitals, did you ever retain a portion of the network discount?

## REQUESTS FOR PRODUCTION OF DOCUMENTS

Please produce the originals of the following documents, or the authentic duplicate (as defined by Rule 1001(4) of the Federal Rules of Civil Procedure) thereof:

1.  Produce all documents you were asked to identify in connection with any of the preceding interrogatories.

**RESPONSE:**

2.  Produce all deposition transcripts of any depositions taken in any case in which you were a defendant concerning Access Fees.

**RESPONSE:**

3.  Produce all trial transcripts in any case in which you were a defendant concerning Access Fees.

**RESPONSE:**

4.  Produce all interrogatory answers submitted by BCBSM in any case in which you were a defendant concerning Access Fees.

**RESPONSE:**

5.     Produce all documents produced by BCBSM in any case in which you were a defendant concerning Access Fees, except for documents that specifically and only relate to issues unique to those cases.

**RESPONSE:**

6.     Produce all written discovery responses propounded by BCBSM in any case in which you were a defendant concerning Access Fees.

**RESPONSE:**

7.     Produce all documents showing the amount of Access Fees charged by BCBSM to Borroughs at any time.

**RESPONSE:**

8.     Produce all documents concerning BCBSM's decision to charge Access Fees beginning in 1994.

**RESPONSE:**

9.     Produce all documents relating to internal training, instructions, or directives about Access Fees.

**RESPONSE:**

10.     Produce all documents relating to internal BCBSM communications about Access Fees.

**RESPONSE:**


11.    Produce all documents relating to other communications about Access Fees.

**RESPONSE:**


12.    Produce all documents not already requested concerning your practice of charging Access Fees.

**RESPONSE:**


13.    Produce all documents related to quarterly settlements between you and the Plan or Borroughs, separately for each Contractual Period.

**RESPONSE:**


14.    Produce all documents related to annual settlements between you and the Plan or Borroughs, separately for each Contractual Period.

**RESPONSE:**


15.    Produce, separately for each Contractual Period, your electronic paid claims files relating to the Plan or Borroughs with complete procedure, diagnosis, provider, and monetary detail.

**RESPONSE:**

16.   Produce, separately for each Contractual Period, your enrollment history files relating to the Plan or Borroughs.

RESPONSE:

17.   Produce, separately for each Contractual Period, your coordination of benefits history files relating to the Plan or Borroughs.

RESPONSE:

18.   Produce all documents supporting the contention in the "Talking Points" document attached to the Complaint as Exhibit 10 that "organizations with administrative services contracts are beginning to examine their self-funding arrangements with greater detail."

RESPONSE:

19.   Produce all documents supporting the contention in the "Talking Points" document attached to the Complaint as Exhibit 10 that "this [referring to the language quoted in the immediately preceding document production request] has resulted in some employers realizing they don't have a complete understanding of certain elements of their self-funding arrangement."

RESPONSE:

20.   Produce all documents supporting the contention in the "Talking Points" document attached to the Complaint as Exhibit 10 that one such element of self-funded arrangements that some employers don't completely understand is the "ASC access fee."

**RESPONSE:**

    21.    Produce all documents supporting the contention in the "Talking Points" document attached to the Complaint as Exhibit 10 that "in order to provide an apples-to-apples comparison with the administrative fees of our competition and better position BCBSM in the marketplace, BCBSM separated the ASC access fee from the administrative fee and made it an element of the billed hospital amount."

**RESPONSE:**

    22.    Produce all documents supporting the contention in the "Talking Points" document attached to the Complaint as Exhibit 10 that "the ASC access fee helps cover the costs associated with the establishment, management and maintenance of BCBSM's provider networks."

**RESPONSE:**

    23.    Produce all documents supporting the contention in the "Talking Points" document attached to the Complaint as Exhibit 10 that "through these provider networks, BCBSM is able to achieve the best negotiated rates with providers and hospitals, resulting in deep discounts for its customers."

**RESPONSE:**

    24.    Produce all documents supporting the contention in the "Talking Points" document attached to the Complaint as Exhibit 10 that your "deep network discounts are unique."

**RESPONSE:**

25.    Produce all documents supporting the contention in the "Talking Points" document attached to the Complaint as Exhibit 10 that your network discounts are "deep enough that, even with the access fee, our customers still save more than they would with any of our customers."

**RESPONSE:**

26.    Produce all documents evidencing all network discounts available to the Plan or Borroughs, separately for each Contractual Period.

**RESPONSE:**

27.    Produce all documents filed with the Commissioner of Insurance regarding Access Fees, administrative costs allocation methodology, definitions, or anything else contemplated by MCL 550.1211(2).

**RESPONSE:**

VARNUM LLP
Attorneys for Plaintiffs

Date:   September 16, 2011          By: _____ P69236 /m
                                        Perrin Rynders (P38221)
                                        Aaron M. Phelps (P64790)
                                    Business Address & Telephone:
                                        Bridgewater Place, PO Box 352
                                        Grand Rapids, MI, 49501-0352
                                        Phone:  (616) 336-6000
                                        Fax:  (616) 336-7000
                                        prynders@varnumlaw.com
                                        amphelps@varnumlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2011, a true and correct copy of Plaintiffs' First

Request For Admissions, First Set Of Interrogatories, And First Set Of Document Production

Requests have been served by United States mail upon:

      Alan N. Harris
      G. Christopher Bernard
      BODMAN PLC
      201 S. Division St., Suite 400
      Ann Arbor, MI  48104

          By: _____ P69236 for

          Perrin Rynders (P38221)
          Aaron M. Phelps (P64790)
     Business Address & Telephone:
          Bridgewater Place, PO Box 352
          Grand Rapids, MI, 49501-0352
          Phone:  (616) 336-6000
          Fax: (616) 336-7000
          amphelps@varnumlaw.com

4568042_1.DOC